241 S.W.2d 35 (1951)
ADAMS
v.
BOARD OF ZONING ADJUSTMENT OF KANSAS CITY et al.
No. 21587.
Kansas City Court of Appeals. Missouri.
June 4, 1951.
David M. Proctor, City Counselor, Forest W. Hanna, Guy W. Rice, Asst. City Counselors, all of Kansas City, for appellant.
William Icenogle, Jack G. Beamer, and Stubbs, McKenzie, Williams & Merrick, all of Kansas City, for respondent.
BROADDUS, Presiding Judge.
This is an appeal from the judgment of the Circuit Court of Jackson County reversing the decision of the Board of Zoning Adjustment of Kansas City, and arises out of the following facts:
Respondent, William H. Adams, is the owner of and lives with his wife at 5252 Highland Avenue, Kansas City, Missouri.
*36 This house is located at the northwest corner of 53rd Street and Highland Avenue, facing east, and on a lot approximately 140 feet by 140 feet. Highland Avenue runs north and south; 53rd Street east and west. This property of respondent is in a U-1 b (two family dwelling or duplex) district under Section 58-4 of the Zoning Ordinance of Kansas City.
This residence is a story-and-a-half in height and a bungalow type in construction. Practically all of the neighboring houses are of similar bungalow type. Respondent has owned the house and lived in it for about 36 years. On January 31, 1946, and for a long time prior thereto, a Mr. Traugott lived as a tenant on the first floor. On this last-mentioned date, on application made by a contractor, one R. E. Pringle, and respondent Adams, permit No. 18347-A was issued by the Commissioner of Buildings and Inspections of Kansas City in words and figures, to-wit:
"To alteration repairs on second floor for apartment inclusive of 3 fire ladders on premises known as 5252 Highland * * *. Said alterations and repairs to be constructed of wood plaster, foundation of _____ with _____ roof, to cost $2000.00 * * *."
By virtue of this permit the second floor of the bungalow which had been an empty attic until this date was made into an apartment and, immediately after being constructed, was rented to a Mr. Campbell.
On February 2, 1950, permit No. 27412-A was issued by said Commissioner at the request of respondent Adams and a builder, one R. E. Adkins, "to convert second floor of dwelling into 8 x 28 room and side with asbestos shingles on premises known as 5252 Highland * * *." By this permit an additional apartment was built in the attic space and rented to respondent's grandson.
On March 29, 1950 said Commissioner sent respondent Adams the following:
"Your request * * * for permit for alteration and occupancy of dwelling on premises located at 5252 Highland is hereby refused under 58-4 of Zoning Section. Has triplex in U-1 b."
This amounted to a refusal to permit a use and occupancy by more than two families in said dwelling.
On April 21, 1950, respondent Adams filed his appeal with the Board of Zoning Adjustment from the decision of the Building Commissioner. The Board set the hearing for 2:00 p. m., on May 23, 1950, and gave notice to that effect. On that date many witnesses, including respondent Adams and his attorney appeared. Two members of the Board, including Hugh R. Ennis, Chairman, were present. At the opening of this session Mr. Ennis said: "We do not have a quorum today, but we will hear all the cases and then we will submit a full report to the Board when they meet again. We will call a special meeting. You folks are all here and we don't want to waste your time. * * *. This machine records and we will be able to hear the actual testimony as recorded by the machine." No objection was made to this course of procedure.
The meeting thereupon proceeded. Respondent's attorney made an extended statement, the substance of which was: That the residence at 5252 Highland is in a zoned area which is limited to duplex or two family dwellings; that in 1945 the residence was a two kitchen dwelling maintained by Mr. and Mrs. Adams and a tenant, a Mr. Traugott; that in 1945 Mr. and Mrs. Adams noticed in the newspapers advertised requests by federal and state agencies requesting home owners to convert their homes into extra rooms to take care of returning veterans and their families due to the housing shortage; that Mrs. Adams telephoned to the City Hall talking to someone, as she thought, in the zoning department; that the person to whom she talked gave her a list of three contractors. At the top of the list, and the one the Adamses selected, was a Mr. Pringle. This contractor accepted the bid and made a contract to remodel the upper story into an apartment. Priority on materials was given to the contractor, Pringle, through the City to aid him in building this apartment. When the apartment was completed, Mr. Campbell, a World War II veteran, moved into it.
*37 In February, 1950, through Mr. Adkins, a contractor, the Adamses obtained another permit to build an additional apartment. When it was almost completed notice was received from the Building Inspector to stop any further building; that four families live at 5252 Highland, Mr. and Mrs. Adams on the first floor; also on the first floor, Mr. Traugott, and his family; Mr. Campbell with his family on the second floor and Bill Adams, II, a World War II veteran, with his family, in the apartment that was not fully completed.
Counsel for Mr. and Mrs. Adams further stated that they did not know that they were violating the ordinance relative to zoning; that they have spent about $7000 in doing the remodeling; that they receive $50 per month from each of their three tenants.
The statement of respondent's attorney was followed by the testimony of respondent Adams, tenant Campbell, tenant Traugott, and respondent's wife. The testimony of these witnesses was a mere verification of the opening statement of the attorney.
Witnesses in opposition stated: "This addition is a monstrosity"; that "a stairway hangs out there so unsightly. It's an eyesore." (Pictures in the transcript show outside entrances to the apartments by means of wooden steps, supported by posts or stilts, also made of wood.) Letters from other opposing neighbors were introduced, and also a protest petition signed by forty property owners in the immediate vicinity.
The Board meeting was thereupon continued by formal notice to June 13, 1950, "or until a special meeting which may be called before that time." On May 26, 1950, a special meeting of the Board was held with a quorum present and the Adams petition "to continue the four-family occupancy" was considered and disapproved. The only person, besides the members of the Board, who appeared, was Mr. Lang, Commissioner of Buildings and Inspections, and the only statement made by him as shown by the record was that: "The permit, issued for certain alterations to this residence, had in no way authorized the conversion of this residence for additional apartment units, as has been made by the applicant."
On June 24, 1950, respondent Adams filed in the Circuit Court his petition for certiorari to review the order of the Board of Zoning Adjustment. The writ issued, and the members of the Board filed their return. The trial was had in the Circuit Court on August 20, 1950. The evidence presented there consisted of the transcript and records before the Board of Zoning Adjustment and the zoning ordinances of the City.
The Circuit Court found:
"1. The action of the defendants as the Board of Zoning Adjustment of Kansas City, Missouri, in affirming the order of the Commissioner of Buildings and Inspections of Kansas City, Missouri, to cease and desist the use of more than two kitchens in said premises was arbitrary, unreasonable and illegal.
"2. The hearings had before the said Board of Zoning Adjustment on May 23, 1950, and May 26, 1950, did not constitute a public hearing as required by law.
"3. The enforcement of the order of said Commissioner of Buildings and Inspections against the plaintiff is a practical difficulty or unnecessary hardship within the meaning of the Zoning Ordinance of Kansas City, Missouri.
"4. Defendants and the City of Kansas City, Missouri, are estopped from asserting that the use of more than two kitchens in said premises by plaintiff or his tenants is contrary to the ordinances of said City, or the rulings or orders of said Board of Zoning Adjustment."
From the judgment based on these findings the Board perfected its appeal to this court.
The decision of our Supreme Court in State ex rel. Nigro v. Kansas City, 325 Mo. 95, 27 S.W.2d 1030, 1032, controls the instant case. In the Nigro decision the Court set out various sections of the Zoning Ordinance of Kansas City and uses this language:
*38 "The board of zoning appeals is intrusted with the duty of enforcing the provisions of the ordinance; it is an administrative body, without a vestige of legislative power. It cannot therefore modify, amend, or repeal what the ordinance itself designates as its `general rules and regulations'; * * *. The ordinance does not purport to authorize the board of zoning appeals to modify, amend, or repeal any of its provisions; but it does permit and direct the board to modify or partially suspend a rule in its application to a particular case where strict enforcement would `by reason of exceptional circumstances or surroundings constitute a practical difficulty or unnecessary hardship.' * * * But the board can in no case relieve from a substantial compliance with the ordinance; their administrative discretion is limited to the narrow compass of the statute; they cannot merely pick and choose as to the individuals of whom they will or will not require a strict compliance with the ordinance. * * *
"The review of a decision of a board of zoning appeals by the circuit court being purely statutory, the court's jurisdiction in such proceeding does not extend beyond that conferred by the statute. Looking to the statute it is apparent that the court is not vested with the power to supervise the discretion lodged with a board of zoning appeals; it is not authorized to entertain a hearing de novo and then make such order as in its opinion the board should have made. The court's authority is plainly limited to correcting illegality. If the court finds the order under review illegal, in whole or in part, it may reverse or affirm, wholly or partly, or may modify, the order, as may be necessary in order to correct the illegality. As the board of zoning appeals in this case was wholly without the power to grant the relief sought by respondent, its order denying such relief could not in any respect have been illegal. * * *"
The court was not justified in holding the action of the Board to be arbitrary and illegal because the Board had no power to grant respondent the relief sought. What respondent, in fact, was asking the Board to do was to "re-zone" his property. The City Council only is authorized to change the zoning of a district. As stated in the Nigro case, supra, the Board "can in no case relieve from a substantial compliance with the ordinance". The application of the zoning ordinance to respondent's property created no "practical difficulty or unnecessary hardship" within the meaning of the ordinance.
In view of our holding that the Board was not authorized to grant respondent the relief he sought, the question of whether or not the hearings before the Board on May 23 and 26 were proper becomes immaterial.
The remaining questionIs the City estopped from objecting to a zoning use in excess of two families in respondent's residence? We think not.
The rule seems to be well settled that in the enforcement of a zoning ordinance a municipality acts in its governmental capacity, as distinguished from its proprietary capacity, so that the doctrine of estoppel cannot be applied against the municipality, even in favor of one who acted under a permit issued in violation of such ordinance. Many cases so holding are to be found in 119 A.L.R. pp. 1509-1518.
Our Supreme Court in Ryan v. City of Warrensburg, 342 Mo. 761, 117 S.W.2d 303, says, loc. cit. 307: "Neither would the issuance of a license to operate (which is usually only a formal act of a ministerial officer), to plaintiff, be of any avail if it was unauthorized or void under the zoning ordinance."
In City of Maplewood v. Provost, 25 S.W.2d 142, the St. Louis Court of Appeals uses this language at page 143: "But if the permit had authorized the location of the building in violation of the ordinance, it would have been no justification for the commission of such offense. The building inspector had no power, by the issuance of a permit, to amend or repeal the ordinance."
This court in Kansas City v. Wilhoit, Mo.App., 237 S.W.2d 919, 925 (not yet reported in State Reports) said: "Nor does the fact that city officials fail to enforce *39 the zoning ordinance against a violator estop the city from subsequently enforcing it against him." (Citing cases.)
Respondent, in support of his claim of estoppel, cites three cases. One is a case in quo warranto; the other two are injunction cases. None of them involves a zoning law.
We are compelled to hold that the judgment of the circuit court must be reversed. It is so ordered.
All concur.