110 N.J. Super. 287 (1970)
265 A.2d 399
WILLIAM DEBOLD, GEORGE FULLER AND FREDERICK SMITHLINE, TRUSTEES IN LIQUIDATION OF CAMBRIDGE DEVELOPMENT CORP., A NEW JERSEY CORPORATION, PLAINTIFFS,
v.
TOWNSHIP OF MONROE, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, MONROE PLANNING BOARD OF THE TOWNSHIP OF MONROE, AND JOSEPH INDYK, IND., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided April 20, 1970.
*289 Mr. Albert S. Gross for plaintiffs (Messrs. Gross, Demetrakis and Donohue, attorneys).
Mr. Richard S. Cohen for the defendants Township of Monroe and Joseph Indyk.
Mr. Joseph L. Stonaker for the defendant Monroe Planning Board of the Township of Monroe.
FURMAN, J.S.C.
Plaintiffs seek a declaratory judgment that Cambridge Development Corporation (Cambridge) or its prospective purchaser may develop over 150 acres in a development known as Mill Lake Manor in Monroe Township in accordance with the zoning ordinance in effect in 1956, on 75' x 100' lots in the Residence B zone and on 100' x 150' lots in the Rural Residence zone. Minimum lot sizes were upgraded by a zoning amendment in 1957 to 100' x 100' lots in the Residence B zone and to 150' x 200' lots in the Rural Residence zone.
The ten years from 1956 to 1966 are a chronicle of sporadic minimal activity by the owners of Mill Lake Manor and acquiescence in the 1956 zoning status quo by the township. Preliminary subdivision approval for 1036 lots on 435 acres was granted by the planning board on April 27, 1956 and extended on February 10, 1959 until April 27, 1962 upon *290 the condition that something less than 10% of the entire tract be conveyed for school and other public purposes. After fulfillment of that condition and concurrence by the Middlesex County Planning Board, final approvals were granted by the planning board on April 19 and October 15, 1962. When Cambridge took title in March 1966, 13 model houses had been built and 37 other houses had been partly built. Plaintiffs are the trustees in liquidation of Cambridge.
Cambridge proceeded expeditiously. On April 29, 1966 it filed with the planning board two performance bonds for improvements. Upon its application the planning board adopted a resolution on May 4, 1966 requiring compliance by Cambridge with prior planning board resolutions and planning board and other municipal agreements with its predecessor in title. Cambridge constructed an on-site and off-site sanitary sewer system, a storm sewer system and a water utility and distribution system servicing other developments as well as its own. It sold off sections of the entire tract known as Mill Lake Manor to another developer, who built a total of 524 houses in conformity with the minimum lot sizes under the 1956 zoning. The remaining unimproved areas are in two large sections and one smaller section not contiguous, in the Residence B zone, and two large sections, separated by the Spotswood-Englishtown Road, in the Rural Residence zone.
The right of Cambridge or its prospective purchaser to continue the development of Mill Lake Manor under the 1956 zoning was challenged by the newly appointed township attorney in a letter dated January 20, 1970.
Initially this court holds that the purported three-year extension of the preliminary subdivision approval was ultra vires and void. Hilton Acres v. Klein, 35 N.J. 570 (1961) thus construes N.J.S.A. 40:55-1.18. In Hilton Acres the Supreme Court allowed the developer to apply for a final approval within the eight months remaining of the three-year period of the preliminary approval when the void extension of the preliminary approval was granted. To allow *291 Cambridge to reapply for a final approval for subdivision of the unimproved sections, within the remaining two and a fraction months of the three-year period of the preliminary approval when the void extension was granted in 1959, would be to revert 11 years in derogation of the final approval already granted to its predecessor in title.
Defendant township and planning board contend that the final approval was void because based upon a void preliminary approval, relying generally upon Hilton Acres, supra. The plaintiffs counter that the holding of Hilton Acres in sanctioning a grace period breathes life into the final approval, which was applied for and granted within six months after the decision in Hilton Acres, the first definitive authority that extensions of preliminary subdivision approvals are ultra vires and void. The final approval resolutions in fact refer to the preliminary approval in 1956, not to the extension of the preliminary approval in 1959.
Assuming the validity of the final subdivision approval in 1962, the next issue to be dealt with is whether the then owner's rights lapsed because of its lack of reasonable diligence and expedition in developing Mill Lake Manor from 1962 to 1966. The planning board's final approval on April 19, 1962 was conditional upon the posting of performance bonds by the then owner. This condition was met. Otherwise the record is meager as to any specific activities in the development of Mill Lake Manor from the second resolution of final approval on October 15, 1962 until the conveyance of the entire tract to Cambridge 3 1/2 years later. Various agreements and resolutions were entered into respecting sanitary and storm sewer system. Reliable Water Company was granted a franchise to operate a water works. Presumably the 13 model houses were built in a block off the Spotswood-Englishtown Road and the 37 other houses were partly built during this period. See Cella v. Cedar Grove Board of Adjustment, 45 N.J. Super. 585 (Law Div. 1957), requiring final subdivision approval prior to the issuance of a building permit.
*292 When Cambridge took title in March 1966 the project was dormant. Construction of the 37 houses had been abandoned and vandalism of them had been rife for some time. The building permits which had issued were specifically determined to have lapsed according to the planning board resolution of May 4, 1966. Although granted approval of a subdivision of 1036 lots on over 350 acres, Cambridge's predecessor in title had completed only the 13 model houses and the streets, sidewalks, curbs and gutters in the immediate vicinity. Construction had not been undertaken on sanitary sewers, storm sewers or a water distribution system.
The Supreme Court by Justice Hall stated in Levin v. Livingston Tp., 35 N.J. 500 (1961):
* * * the statute is presently silent. It could be argued therefrom that the Legislature thereby intends that time for completion of improvements and the effectiveness of final approval shall not extend beyond a reasonable date after the grant. [at 519]
This language has been favorably cited, although no reported decision has held that a developer's rights were cut off because of failure to proceed diligently and expeditiously following a final approval. See Virginia Construction Corp. v. Fairman, 39 N.J. 61, 69 (dictum that over two years and seven months may be a "sufficient period"); United States Home & Develop. Corp. v. LaMura, 89 N.J. Super. 254, 262 (App. Div. 1965) (holding that approximately ten months "was not so unreasonable a time as to permit destruction of plaintiff's rights by upgrading of lot sizes"); Mountcrest Est., Inc. v. Rockaway Mayor and Tp. Com., 96 N.J. Super. 149, 157 (App. Div. 1967).
These authorities deal with the issue whether the upgrading of lot sizes by a subsequent zoning amendment invalidates a final subdivision approval. But the principles declared apply equally to the cutting off of a developer's right to proceed in accordance with the minimum lot sizes in *293 effect at the time of his preliminary approval, which were already upgraded at the time of his final approval.
This court holds that the final subdivision approval granted in 1962 lapsed because of the failure of Cambridge's predecessor in title to proceed with reasonable diligence and expedition. The then owner relinquished its right to subdivide into minimum lot sizes pursuant to the zoning in effect in 1956, because of inactivity and delay for a substantial part of the 3 1/2 years from 1962 to 1966. Cambridge can stand no higher. To prevail in this litigation plaintiffs must establish some right subsequent to 1962 to subdivide the 512 unimproved lots in conformity with the 1956 zoning, now superseded and upgraded 13 years ago.
George Fuller, one of the trustees in liquidation of Cambridge and its president, was first aware of Mill Lake Manor in 1965. He had conversations with the then mayor and the then township attorney, who assured him that the subdivision approval for minimum lot sizes under the 1956 zoning was valid and in effect. Reliance upon representations by township officials which were unauthorized and contrary to law created no estoppel against the township. Feldman v. Urban Commercial, Inc., 70 N.J. Super. 463, 478 (Ch. Div. 1961); 28 Am. Jur.2d, Estoppel and Waiver, § 130 (1966).
The then mayor and the then township attorney asked for a commitment by Cambridge to supply sanitary sewer and water distribution systems to two developments north of Mill Lake Manor, described as badly in need of such improvements. Cambridge so agreed, although not in writing, and eventually extended the sanitary sewer and water distribution system to service the two off-site developments.
The planning board resolution of May 4, 1966 was not, according to its terms, a final subdivision approval. It was drawn as an agreement, reciting the preliminary and final subdivision approvals, binding Cambridge to all agreements with its predecessor in title and all planning board resolutions, and imposing the condition of new building permits.
*294 The Municipal Planning Act (N.J.S.A. 40:55-1.1 et seq.) is silent as to any authority in planning boards to enter agreements to extend final subdivision approvals upon new conditions. Such authority cannot be derived from the general municipal authority to enter contracts (N.J.S.A. 40:50-1 et seq.; see Midtown Properties, Inc. v. Madison Tp., 68 N.J. Super. 197 (Law Div. 1961), aff'd 78 N.J. Super. 471 (App. Div. 1963)), a fortiori not under the circumstance that the final subdivision approval had lapsed because of lack of reasonable diligence and expedition. According to N.J.S.A. 40:55-1.14, the procedure to modify a final subdivision approval should be upon notice and hearing.
Nor can the resolution stand substantively as a final subdivision approval, although not so designated. It purported to authorize the development of over 150 acres in minimum size lots in violation of the zoning amendment of nine years earlier.
Thus the planning board resolution of May 4, 1966 must be held to have been ultra vires and void. Nevertheless, plaintiffs contend that the township is equitably estopped from contesting Cambridge's right to develop the unimproved sections of Mill Lake Manor in conformity with the zoning in effect in 1956.
The equitable estoppel claim has several aspects: (1) Cambridge, in reliance on the 1962 final approval and the 1966 resolution, expended substantial sums of money on sanitary sewer, storm sewer and water utility and distribution systems for all of Mill Lake Manor, part of which is fairly allocable to the unimproved sections; (2) Cambridge, in reliance on the 1962 final approval and the 1966 resolution, expended substantial sums of money on the development of the unimproved sections; (3) Cambridge in reliance on the 1962 final approval incurred the cost of purchasing Mill Lake Manor, although the fair market value would have been substantially less if the development must be subdivided into minimum lot sizes under the 1957 zoning; (4) Cambridge, in reliance on representations of municipal officials, agreed *295 to and in fact carried out sanitary sewer and water distribution improvements to service two nearby developments; (5) one of Cambridge's predecessors in title conveyed tracts of substantial acreage and value for school and other public purposes, and (6) Monroe Township may not be heard to challenge Cambridge because of its issuing of over 500 building permits in the improved sections of Mill Lake Manor from 1966 on, all on lots in conformity with the 1956 zoning.
A distinction is drawn in Gruber v. Mayor, etc., Raritan Tp., 39 N.J. 1, 15 (1962), between municipal acts which are ultra vires in the primary sense  that is, utterly beyond the jurisdiction of the municipality, therefore precluding an estoppel based upon detriment in reliance  and municipal acts which are ultra vires in the secondary sense  that is, irregular exercises of a basic municipal power, which may be the basis for an estoppel. That distinction is immaterial in this litigation.
All the substantial expenditures by Cambridge were unrelated to the minimum lot size of the remaining unimproved sections. See Virginia Construction Corp. v. Fairman, supra at 72. The sanitary sewer, storm sewer and water distribution systems would have been installed whether the development was to be on smaller or larger lots. The township engineer disclosed incidentally that the practice in the township has been to require developers to provide off-site sanitary and storm sewers for the entire upland within a drainage area. The road patterns, as laid out, are suitable for development under the 1957 zoning in the unimproved sections of the Residence B zone. Modifications of the road patterns, as laid out, are necessary in the unimproved sections of the Rural Residence zone, but no preliminary expenditures would be lost as a result of such modifications. Nor would there be any financial detriment attributable to the preliminary grading which has been accomplished.
The excess purchase price argument must be rejected factually and legally. Cambridge was a volunteer in its purchase of Mill Lake Manor, relying for its right to proceed *296 under the 1956 zoning on a final approval to its predecessor in title, then 3 1/2 years old and vulnerable as stale, and on informal statements by then township officials. The total value of the lots is fractionally less under the 1957 than under the 1956 zoning. But there is no credible proof that Cambridge would not derive profits or at worst break even if the minimum lot sizes in the unimproved sections conform to the zoning ordinance in effect for 13 years. Claims of hardship or substantial loss because of potential loss of profits have been disapproved in New Jersey decisions. Greenway Homes v. River Edge, 137 N.J.L. 453, 457 (Sup. Ct. 1948); Virginia Construction Corp. v. Fairman, supra at 71-73.
The various expenditures made for the benefit of the township and of the nearby developments would have been made regardless of the minimum lot sizes in effect. In addition, in the balancing of equities Cambridge has had the benefit of the nonenforcement of the 1957 zoning amendment for over three years while half the tract has been developed at the fractionally higher total purchase price attributable to the smaller lot sizes under the 1956 zoning.
The township did not waive its right to enforce the 1957 zoning because of its issuing of building permits in conformity with the 1956 zoning. Failure to enforce or apply the law by municipal authorities is not a waiver, nor does it give rise to an estoppel in favor of someone who asserts his reliance that the law would not be enforced or applied. Kennedy v. Newark, 29 N.J. 178, 191-92 (1959); East Orange v. Bd. of Water Com'rs, etc., 41 N.J. 6, 17-20 (1963).
A final contention by plaintiffs is that Cambridge has a statutory right to proceed because of two certificates of subdivision approval issued by the township clerk, pursuant to N.J.S.A. 40:55-1.24, one on May 9, 1968 to a law firm representing Cambridge and one on January 13, 1970 to a prospective purchaser from Cambridge. That contention is untenable. The legislative purpose is not for the protection of the owner but for the protection of a subsequent purchaser or *297 lienor who acquires his interest for value in reliance on such a certificate. N.J.S.A. 40:55-1.25.
Judgment is rendered in favor of defendants for all the foregoing reasons.