506 P.2d 470

James R. HARRELL et al., Plaintiffs-Respondents,

v.

CITY OF LEWISTON, a municipal corp. et al., Defendants-Appellants.

No. 11031.

Supreme Court of Idaho.

Feb. 14, 1973.

Michael C. Moore, D. K. Worden, Lewiston, for defendants-appellants.

William v. McCann, Jr., Merlyn W. Clark, Lewiston, for plaintiffs-respondents.

McFADDEN, Justice.

This action for writ of mandate was instituted by James R. Harrell and Loretta M. Harrell, husband and wife, and Albert A. Broughton and Connie L. Broughton, husband and wife (referred to herein as respondents). By their complaint, the respondents sought to compel the City of Lewiston, its mayor, councilmen and building inspector, the appellants herein, to issue the respondents a building permit to authorize construction of a building on premises owned by them which fronted on 17th Street (a north-south street of the City). The proposed structure was designed to be used as a pizza parlor with parking areas around the building. The pizza parlor site was a part of a larger area previously annexed by the City in 1969. At the time of the annexation, the property was zoned by Nez Perce County as agricultural land.

The appellants answered the respondents' complaint raising some factual issues and by way of affirmative defenses alleged that: the land was zoned "F" as farm land; traffic hazards on 17th Street necessitated the construction of a frontage road; an agreed condition to passage of any ordinance changing the zoning of the property from an argicultural zone to a commercial zone was the deeding to the City a right of way for a frontage road along 17th Street running between 21st Avenue and 26th Avenue; and as a final affirmative defense, an unusual traffic hazard existed by reason of the steepness of 17th Street grade. The appellants further alleged the City had insufficient time to study the traffic problem and to arrive at a reasonable solution to the problem.

After the trial, the district court, which heard the case without a jury, entered its memorandum opinion, findings of fact, conclusions of law and judgment ordering the appellants to issue the building permit sought by respondents. The City and its officials appealed the trial court's decision.

The trial court found the following facts. The City of Lewiston adopted on January 3, 1966, the 1964 edition of the Uniform Building Code. William V. McCann and his wife, the respondents' predecessors in interest in the property, had owned the land which was about one acre in size. This land was situated east of 17th Street and south of the Lewiston Shopping Center. Prior to December 16, 1969, the land was outside the limits of the City. Under the Nez Perce County zoning ordinance the parcel was zoned as farm land (F).

On December 16, 1969, the City, by ordinance, annexed this property as a part of a larger area and adopted by reference the Nez Perce County zoning ordinance for the annexed area. Prior to adoption of this ordinance the city council did not conduct any hearings. However, the City of Lewiston Zoning Commission held public hearings on the zoning for the proposed annexation.

The McCanns applied to the planning and zoning commission for a zone change of the particular tract from Zone F (farming) to Zone C-3 (commercial). The commission conducted a hearing on this proposed change and continued the hearing to study the traffic problem inherent to 17th Street. On April 7, the commission recommended the McCann's requested zone change to the city council, subject to review by the City Traffic Committee. The

council considered the change and continued the question for another week. On April 19, 1971, the council by motion approved the zone change from "F" to "C–3."

Subsequent to the city council's motion on April 19, 1971, the mayor advised the owners of the property (the McCanns) that the City desired property for a 30 foot frontage road on the east side of 17th Street from 21st Avenue to 26th Avenue and that the City would provide plans for development of the road. Although the McCanns owned other adjacent property, they delivered to the City on July 2, 1971, a deed to a 30 foot right of way bordering only the one acre parcel. The council, by vote, accepted the deed July 6, 1971. The next week, on July 12, the council withdrew its acceptance of the deed.

The same day the McCanns executed the deed to the City for the street right of way they also conveyed the property by deed to the respondents. On July 2, 1971, the respondents applied for a building permit and submitted all necessary supporting papers, i.e., plot plan, construction plans and the fee. In the meantime all city departments except the city council approved the application for a building permit. On July 26, 1961, the council denied the respondents' application for a building permit.

In its conclusions of law, the trial court held that the City misled the respondents to their detriment by its motion of April 19, 1971, approving the zone change from Farm to C–3, and that the City is estopped to deny the validity of the zone change. The court entered other conclusions of law, but the rationale for the conclusions of law and the subsequent judgment and decree rested on the theory of estoppel.

Although the trial court based its decision on the theory of estoppel, the appellant raised several issues which require discussion first. We must consider whether the motion of the city council on April 19, 1971, changed the zoning from "Farm" to "Commercial" and whether the land was properly zoned "F" (farm) at its annexation.

On April 19, 1971, Mr. McCann requested a zoning change in the Lewiston city council for the property bordering 17th Street. The council granted this request by passing a motion which appellants contend did not effect a proper change of zoning. The respondents claim, by this action, that the one acre parcel of land on the corner of 17th Street and 21st Avenue was zoned commercial. The appellants contend, however, that zoning changes may be effected in the City of Lewiston only by ordinance. Uncontroverted is the fact that the City of Lewiston has regulated zoning in the past by ordinance only. Both parties agree that the City of Lewiston failed to adopt an ordinance on April 19, 1971, pursuant to I.C. § 40–902 et seq. The respondents, however, question whether the formal adoption of zoning regulations by ordinance is required under I.C. § 50–1204 which provides:

"The *city council shall provide for the manner in which such regulations and restrictions* and the boundaries of such districts *shall be determined, established, enforced, and from time to time amended, supplemented or changed.* However, no such regulations, restriction or boundary shall become effective until after a public hearing in relation thereto, at which parties in interest shall have an opportunity to be heard. At least fifteen (15) days' notice of the time and place of such hearing shall be published in the official newspaper of such city." (Emphasis supplied.)

A careful reading of I.C. § 50–1204 suggests that the legislature requires a formal, legislative act by a municipality to enact and change zoning laws. Appearing nowhere in the statute are the words "resolution" or "motion." The power vested in the municipalities by this statute clearly comprehends a legislative, regulatory act. See, 8 McQuillin, Municipal Corporations, § 25.52, p. 130 (3d ed. 1965).

Although the respondents have presented a vexing and novel argument asserting that a motion or resolution is suffi-

cient to establish zoning regulations under I.C. § 50–1204, the City of Lewiston enacts zoning regulations by *ordinance*. Moreover, respondents admit that a municipality is empowered to "provide for the manner in which such regulations or amendments * * * shall be determined." Because the City of Lewiston elected to establish and amend its zoning regulations by ordinance, any legislative act by the Lewiston City Council effecting a zoning change must in substance be accomplished by an ordinance. See, City of Hutchins v. Prasifka, 450 S.W.2d 829 (Tex.1970); Beem v. Davis, 31 Idaho 730, 175 P. 959 (1918); Parr v. Fulton, 9 Mich.App. 719, 158 N. W.2d 35 (1968); City of Sausalito v. County of Marin, 12 Cal.App.3d 550, 90 Cal.Rptr. 843 (1970); G. W. Mart & Son v. City of Grinnell, 194 Iowa 499, 187 N. W. 471 (1922); 8A McQuillin, Municipal Corporations, § 25.245, p. 165 (3d ed. 1965); 8 McQuillin, Municipal Corporations, § 25.52, p. 131 (3d ed. 1965); 5 McQuillin, Municipal Corporations, § 15.02, p. 47 (3d ed. 1965).

Next, appellants assert that the land was properly zoned "F" or farm land from the date of its annexation. The respondents question whether the land was validly zoned upon annexation by the City of Lewiston. On December 15, 1969, the City adopted ordinance No. 2881 which annexed the respondents' property. The annexation ordinance also adopted by reference the Nez Perce County Zoning Ordinance as the official zoning ordinance for the City of Lewiston. Prior to the adoption of the annexation ordinance the Lewiston Zoning Commission held a public hearing on the zoning for the proposed annexation and reported its findings to the city council. The city council decided, without holding a further public hearing, to retain the zoning classification of "F" or farm for the land on which respondents propose to build a pizza parlor. The respondents contend that the Lewiston City Council, by omitting a public hearing before the council, failed to zone the respondents' property upon annexation.

■ Although the appellants concede that the city council failed to hold a public hearing before adoption of the Nez Perce County zoning ordinance, they contend a public hearing before the city council is not required when zoning ordinances are adopted in annexation proceedings. I.C. § 50–1206 provides:

"Prior to any ordinance or resolution which commences annexation proceedings, the council shall refer the zoning of the affected territory for report and recommendation to the zoning commission, if one exists. *Said commission shall, after two (2) publications of notice in a newspaper of general circulation within the county, hold a public hearing on the zoning of the area proposed to be annexed, and report to the council its considerations and findings,* making such recommendations for zone classification, if and when the area is annexed. Following such hearing, and after receipt of the zoning commission report, the council shall determine the proper zoning and concurrently with or immediately following the ordinance of annexation the council shall classify the annexed territory under its zoning ordinance." (Emphasis Supplied.)

By enacting I.C. § 50–1206 the legislature provided for a specific method for adopting zoning regulations when a municipality annexes land. The provision states that before commencing annexation proceedings, the city council shall refer the zoning of the territory to be annexed to the zoning commission, if one exists, and that the commission shall hold a public hearing and report its findings to the city council. Only after the zoning commission holds a public hearing and submits a report to the city council, may the city council "determine" the zoning regulation. Then, the zoning regulation may be adopted concurrently with or immediately after the annexation ordinance. The language of this provision expressly requires the zoning commission to hold a public hearing pursuant to specific notice requirements. In this case, it is uncontroverted that the City

of Lewiston Planning and Zoning Commission held public hearings for the zoning of the proposed annexation in compliance with I.C. § 50–1206. Since I.C. § 50–1206 does not require a public hearing except before the city zoning commission when zoning regulations are adopted during or after annexation of territory, we conclude that the Lewiston City Council's adoption of the Nez Perce County Zoning Ordinance in the annexation ordinance by reference on December 15, 1969, was validly executed.

The appellants contend that the trial court erred in concluding that the building permit must be issued. In response the respondents contend that the City of Lewiston's failure to adopt a valid zoning ordinance upon annexation resulted in the property being unzoned following annexation. Hence, the respondents claim that the trial court properly ordered the building permit to issue. In support of this contention the respondents rely on Ben Lomond, Inc. v. City of Idaho Falls, 92 Idaho 595, 448 P.2d 209 (1968). In the Ben Lomond case the City of Idaho Falls annexed land without providing for a zoning ordinance. Since the land was unzoned at the time of the application for the building permit, this Court held that the permit must issue because the applicant had tendered the required fees and complied with all requirements. In this case, however, the property was zoned "F" (farm) from the date of the property's inclusion within the city limits of Lewiston on December 15, 1969, until the respondents filed their application on July 2, 1971, for a building permit. As previously discussed there was no defect in the ordinance annexing the property and classifying it as "farm zone." Furthermore, the city council motion on April 19, 1971, granting McCann's request for a zone change did not execute a valid zoning ordinance amending the ordinance adopted in December of 1969.

From our preceding discussion we have concluded that the parcel of land in question was zoned "F" at the date of its annexation to the City of Lewiston and that

the city council's motion on April 19, 1971, failed to effect a valid zoning change. In light of the conclusion that the land has been always zoned "F," farm, we must consider whether the theory of estoppel is applicable in this case.

■ Although a municipality may be estopped in limited circumstances, the enactment of zoning regulations is a governmental function which is not usually subject to estoppel.

"It is fundamental that the enactment of a zoning ordinance constitutes the exercise of a legislative and governmental function. The reason upon which this principle is based is that zoning is essentially a political, rather than a judicial matter, over which the legislative authorities have, generally speaking, complete discretion. It is an exercise of legislative power residing in the state and delegated to a municipal corporation." 8 McQuillin, Municipal Corporations, § 25.54, pp. 134–135 (3d ed. 1965)

Accord, Herzog v. City of Pocatello, 83 Idaho 365, 363 P.2d 188 (1961); City of Idaho Falls v. Grimmett, 63 Idaho 90, 117 P.2d 461 (1941). This Court has previously articulated a rule prohibiting the application of estoppel against a municipality in the exercise of its police power. Boise City v. Sinsel, 72 Idaho 329, 241 P.2d 173 (1952); Yellow Cab Taxi Service v. City of Twin Falls, 68 Idaho 145, 190 P.2d 681 (1948); City of Idaho Falls v. Grimmett supra. See also, Adams v. Board of Zoning Adjustment, 241 S.W.2d 35 (Mo.App. 1951); City of Raleigh v. Fisher, 232 N.C. 629, 61 S.E.2d 897 (1950); Hebb v. Zoning Board of Appeals of Town of West Haven, 150 Conn. 539, 192 A.2d 206 (1963); City of Hutchins v. Prasifka, supra; Voight v. Saunders, 206 Okl. 318, 243 P.2d 654 (1952). Although the respondents cite Boise City v. Wilkinson, 16 Idaho 150, 102 P. 148 (1909), and Dalton Highway Dist. of Kootenai County v. Sowder, 88 Idaho 556, 401 P.2d 813 (1965), in support of their contention that estoppel will lie against a municipality, both decisions are distinguishable.

In Boise City v. Wilkinson, *supra*, the City claimed property for a street. The City conveyed a parcel of property and waited forty years before it sought to extend a street which had been vacated by the territorial legislature in conflict with an act of Congress. However, the City validly dedicated the street prior to the conveyance. Five ex-mayors of the City testified that the land had been viewed as private property for over thirty years. In conveying the property Boise City described the land including the vacated street to the purchaser. By failing to extend the street for forty years there was evidence that the City encouraged the owners of the land to make improvements thereon. In applying the doctrine of estoppel against the City the Court held that the "equities" rested with the private property owner.

Estoppel was applied in Dalton Highway Dist. v. Kootenai County v. Sowder, *supra*, to prevent the Dalton Highway District from invoking governmental immunity in a suit to quiet title. The highway district claimed land which had been conveyed by quitclaim deed to Sowder. In that case an explicit statutory provision provided that the highway district could be sued. Furthermore, the Court in the Sowder case recognized previous case law allowing suits against highway districts and characterized the function of a highway district as proprietary. The Court stated:

"We recognize the fact that ordinarily the doctrine of laches and estoppel may not be invoked against a municipality on account of the action or inaction or conduct of its public officers. This, however, is more especially true with reference to their acts and conduct in governmental and purely municipal affairs." Dalton Highway Dist. of Kootenai County v. Sowder, 88 Idaho 556, 561, 401 P.2d [813] 815, 816 (1965) (Quoting from Boise City v. Wilkinson, supra.)

Absent from both decisions are facts indicating the exercise of governmental power by the city or highway district in question.

In the exercise of its police power, which includes the enactment and enforcement of zoning regulations, a municipality acts in a governmental capacity. The following jurisdictions have refused to apply the doctrine of estoppel against the enforcement of municipal zoning ordinances in any circumstance. Flinn v. Treadwell, 120 Colo. 117, 207 P.2d 967 (1949); Bianco v. Darien, 157 Conn. 548, 254 A.2d 898 (1968); Berwyn Heights v. Rogers, 179 A.2d 712 (Md.App., 1962); Township of Blackman v. Koller, 357 Mich. 186, 98 N.W.2d 538 (1959); Hutchins v. Prasifka, *supra*. See, 1 A.L.R.2d 64 (Later Case Service). Compare, W. H. Barber Co. v. Minneapolis, 227 Minn. 77, 34 N.W.2d 710 (1948); Debold v. Township of Monroe, 110 N.J.Super. 287, 265 A.2d 399 (1970); Raleigh v. Fisher, 232 N.C. 629, 61 S.E.2d 897 (1950); Haba v. Cuff, 201 N.E.2d 343 (Ohio App., 1963), app. dismissed 176 Ohio St. 374, 199 N.E.2d 736, cert. den. 379 U.S. 964, 85 S.Ct. 656, 13 L.Ed.2d 558, reh. den. 380 U.S. 927, 85 S.Ct. 883, 13 L.Ed.2d 815; Segaloff v. City of Newport News, 209 Va. 259, 163 S.E.2d 135 (1968). See also, 28 Am.Jur.2d, Estoppel & Waiver, § 130 (1966); 1 A.L.R. 2d 338; 1 Yokley, Zoning Law and Practice, § 10–8 (3d ed., 1965); Rhyne, Municipal Law, p. 937 (1957); 8A McQuillin, Municipal Corporations, § 25.349, p. 491 (3d ed., 1965). Some jurisdictions have applied the doctrine of estoppel in zoning cases in limited circumstances. Generally, when allowed, it has been applied only in instances evidencing expenditures of large sums of money and good faith reliance on lawful, affirmative acts of municipal officers or agents. See, Gregory v. City of Wheaton, 23 Ill.2d 402, 178 N.E.2d 358 (1961); City and County of San Francisco v. Burton, 201 Cal.App.2d 749, 20 Cal.Rptr. 378 (1962); In re Heidorn's Appeal, 412 Pa. 570, 195 A.2d 349 (1963); Township of Pittsfield v. Malcolm, 375 Mich. 135, 134 N.W.2d 166 (1965); Ricciardi v. Town Council of North Providence, 267 A.2d 738 (R.I.1970); Murrell v. Wolff, 408 S.W.2d 842 (Mo.1966). See, 1 Yokley, Zoning

Law and Practice, § 10–8 (3d ed., 1961); 28 Am.Jur.2d, Estoppel & Waiver, § 130 (1966). Without deciding what extraordinary circumstances may merit the application of the doctrine of estoppel against the exercise of a municipality's police power in the enforcement of zoning regulations, we conclude that there are no exigent reasons in this case for the application of such doctrine in light of a valid zoning ordinance prohibiting commercial uses on the land in question.

Because the land was at all times zoned "farm" before and during the respondents' application for a building permit, the respondents are not entitled to a building permit. There is no right to a building permit in the presence of a valid zoning regulation forbidding such a use.

For the foregoing reasons, it is our conclusion the district court erred in holding the City was estopped to deny the change of zone. Judgment is reversed. Costs to appellants.

DONALDSON, C. J., and McQUADE, J., concur.

SHEPARD, Justice (dissenting).

I dissent from the majority opinion for a number of reasons. First, in my judgment the portion of the majority opinion dealing with the validity of the various ordinances involved does not withstand analysis. The majority opinion points out that the tract of land in question herein prior to annexation of the City was zoned under a county zoning ordinance as farm land (F).

Under somewhat similar circumstances the author of the majority opinion herein told us in Ben Lomond, Inc. v. City of Idaho Falls, 92 Idaho 595, 448 P.2d 209:

"Although none of the authority cited is binding on this court, it is our opinion that those cases holding that county zoning ordinances cease to apply to land annexed to a city state the better rule. * * * We believe this is an insufficient reason to justify a continued appli-

cation of the county law. The cases supporting the majority rule, on the other hand, rest upon the proposition that local subdivisions of government are separate sovereignties and that the ordinances of one political subdivision are of no effect in another." 92 Idaho at pp. 598–599, 448 P.2d at p. 212.

It is clear to me that just as was the case in Ben Lomond, when the tract in question was annexed to the city, it was unzoned. The majority opinion herein seeks to avoid such conclusion by suggesting that the tract was zoned (F) because the city "adopted by reference the county zoning ordinance for the annexed area." The majority opinion evidently overlooks the provisions of I.C. § 50–1204 which require certain formalities before any such purported action becomes effective.

The illogic of the majority's reasoning becomes more apparent when it strikes down the validity of the zoning change from (F) to (C–3) on the basis that the city council did not comply with the formalities of I.C. § 50–1204. In short, the majority opinion overlooks compliance with the statutory formalities when it validates the city's continued zoning of the property as (F) but strikes down the city's action in changing the zone from (F) to (C–3) because the second action of the city council failed to comply with the necessary statutory formalities.

I likewise disagree with the novel assertion by the court that the principle of estoppel should not be applied against a municipality within the State of Idaho. Since at least 1909 the Supreme Court of Idaho has been committed to a different rule than that laid down by the majority herein. In that year Mr. Justice Ailshie, speaking for the court on rehearing in Boise City v. Wilkinson, 16 Idaho 150, 177, 102 P. 148 (1909) stated:

"We recognize that, as a general rule, the doctrine of estoppel does not apply to municipal corporations, and we are not unmindful of the fact that the courts of

many states have absolutely refused to apply it to such corporations. We are not prepared, however, to announce an unalterable and unexceptionable rule in this state, which would inevitably result in perpetrating wrong and injustice in exceptional cases like this. Courts of equity are established for the administration of justice in those peculiar cases where substantial justice cannot be administered under the express rules of law, and to adopt a rigid rule that recognizes no exceptions would be to rob such courts of much of their efficacy and power for administering even-handed justice. The people in their collective and sovereign capacity ought to observe the same rules and standard of honesty and fair dealing that is expected of a private citizen. In their collective governmental capacity, they should no more be allowed to lull the citizen to repose and confidence in what would otherwise be a false and erroneous position than should the private citizen."

That same language has been reiterated as recently as 1965 in Dalton Highway District of Kootenai County v. Sowder, 88 Idaho 556, 401 P.2d 813 (1965).

It is now desirable, I believe, to turn to the facts of the instant case and state them baldly to determine whether the case at bar presents an exceptional case which would otherwise result in perpetrating wrong and injustice. Also we must determine whether the city has observed "the same rules and standard of honesty and fair dealing that is expected of a private citizen." In my judgment the city has not so acted in the present case.

The record herein reveals that the land in question abuts on one of the main arterial highways within the City of Lewiston leading from the principal downtown business area to the residential area known as the Lewiston Orchards. Almost directly across the street from the tract is located what is perhaps the largest shopping center operation in the State of Idaho, north of Boise.

Prior to purchasing the tract of land herein the respondent it seems to me did all that a reasonable person could be expected to do. He approached the city authorities regarding the possibility of a zone change. Respondent's predecessor in interest applied to the Planning and Zoning Commission of the city for a zone change from (F) (C–3). That Commission conducted a hearing on the proposed change. A study was made of the traffic problem inherent in the business location and the main arterial highway. The matter was reviewed by the city traffic committee. Respondent's predecessor was advised that it would be desirable to open a frontage road along the property in question and the city solicited a deed for the requisite right-of-way from respondent's predecessor in interest. The deed to the property necessary for the frontage road was executed by the respondent's predecessor in interest and delivered to the city and accepted by it on July 6, 1971.

After the Planning and Zoning Commission and the city traffic committee had recommended approval of respondent's request for a zone change, the city council approved the zone change from (F) to (C–3) (albeit by a procedure which the majority opinion now denominates as invalid and insufficient). Thereafter respondent acquired the property in question from his predecessor in interest, the McCanns. Thereafter the respondent submitted all required materials along with its request for a building permit. Respondent's application for the building permit was approved by the county health department, the city public works and traffic commission, and the city building officials. Thereafter, the application for a building permit was submitted to the city council.

At the city council meeting on July 12, 1971 respondent learned, evidently for the first time, that he did not enjoy the favor of the City Council of Lewiston. At that meeting the council by resolution attempted to rescind its prior acceptance of the right-of-way deed. At its meeting on July

26, 1971 the city council voted to deny the building permit, not on the basis that it had theretofore invalidly changed the zone designation for respondent's property, but, rather, on the basis that the respondent evidently did not convey to the city enough property for right-of-way. It was only at trial that the city for the first time took the position that its own ordinance changing the zone classification of the property herein from (F) to (C–3) was invalid. In my judgment the city should not then, nor should it here be permitted to question the validity or the formalities of passage of one of its own ordinances. Particularly should such a posture of the city be barred when, as in this case, the parties have changed their position to their substantial detriment in reliance upon the city's purported action.

I suggest in this case that the City of Lewiston has acted wrongfully and to the detriment of one of its citizens. I suggest further that this is just the case as Mr. Justice Ailshie had in mind when he argued that to adopt a rigid rule that recognizes no exceptions "would be to rob such courts of much of their efficiency and power for administering even-handed justice." In conclusion I would note that the only Idaho authority cited in the majority opinion for the non-application of estoppel against a municipality are the cases of Boise City v. Sinsel, 72 Idaho 329, 241 P.2d 173 (1952), and Yellow Cab Taxi Service v. City of Twin Falls, 68 Idaho 145, 190 P.2d 681 (1948). I regret to point out that neither of said cases provides authority for the majority statement. *Yellow Cab* and *Sinsel* only held that no person could acquire title to city streets since such were held in trust for the public. In *Sinsel* and in *Yellow Cab* parties sought to have a warehouse and a cab stand respectively authorized, although both were located in a city street. In *Sinsel* the court pointed out specifically the distinction between the usual estoppel situation and "the exercise by a city of its police power over a street open and in use by the public."

BAKES, Justice (dissenting).

I concur in that portion of Justice Shepard's dissenting opinion which holds that the City of Lewiston is estopped to deny the validity of its own action in zoning the subject property (C–3).