**Darryl DEIGHTON, d/b/a First Amendment Bookstore, Plaintiff–Appellant,**

v.

**CITY COUNCIL OF COLORADO SPRINGS, an incorporated municipality, Robert Isaac, Leon Young, Lisa Are, Cheryl Gillaspie, John Hazelhurst, Mary Lou Makepeace, Randy Purvis, Larry Small, David White, in their official capacities only as members of the Colorado Springs City Council, Defendants–Appellees.**

No. 93CA1155.

Colorado Court of Appeals, Div. III.

Dec. 29, 1994.

Rehearing Denied Feb. 2, 1995.

Certiorari Granted Aug. 21, 1995.

Arthur M. Schwartz, P.C., Arthur M. Schwartz, Bradley J. Reich, Michael W. Gross, Denver, Philip J. Anderson, Colorado Springs, for plaintiff-appellant.

James G. Colvin, II, City Atty., Office of the City Atty., Colorado Springs, for defendant-appellee.

Opinion by Judge DAVIDSON.

Plaintiff, Darryl Deighton, d/b/a First Amendment Bookstore, appeals from the summary judgment entered in favor of defendants, the City Council of Colorado Springs and its included members in their official capacity (collectively City Council). On alternative theories of state law and federal constitutional law, plaintiff claimed that defendants' temporary moratoria on new adult uses within the city were invalid. Because we agree that the moratoria were improperly enacted, we reverse and remand for further proceedings.

The parties stipulated to the following facts. Plaintiff sought to open an adult bookstore within the City of Colorado Springs. The desired site was zoned C–5, which allows for what was then referred to as "adult use," so long as there exists more than 1000 feet between the "adult use" business and any residential zone, any one, two, or multiple family dwelling, church, park, educational institution, or another adult use. Ten other adult bookstores, including one belonging to plaintiff, were in operation in the city pursuant to this ordinance.

At the time that plaintiff selected the desired site for his bookstore, the 1000–foot separation requirement was calculated, pursuant to ordinance, by direct measurement from the nearest property line of the adjacent use to the nearest entrance of the proposed adult use, "using a route of direct pedestrian access measured as a person would walk safely and properly, without trespassing, with right angles at crossings and with the observance of traffic regulations and lights."

As the desired site was only 119 feet from a neighboring church *via* a pedestrian staircase along the boundary of the two properties, plaintiff planned to construct a fence which would preclude any pedestrian access to that staircase. Access to the bookstore by the proposed circuitous route would meet the 1000 foot distance requirement. Before purchasing the property, plaintiff confirmed with the Colorado Springs zoning administrator that, with this alteration, the desired site would comply with the zoning ordinance.

Plaintiff then purchased the property, constructed the fence, and requested an adult use application, an administrative procedure not expressly required by the applicable zoning ordinances. Approval of plaintiff's application was granted on June 22, 1992, contingent on the acquisition of a certificate of occupancy prior to commencement of operation of business.

On June 23, 1992, in response to complaints by two neighborhood residents about the method of measurement pursuant to which plaintiff's business had met the distance requirement, City Council, by motion, adopted a moratorium on any new adult uses until completion of a study of whether this prescribed method was allowing adult uses to be approved in violation of the spirit, if not the letter, of the law regarding the 1000–foot separation requirement.

A directive to that effect was issued to the city zoning administration. This moratorium necessarily included plaintiff's bookstore, which had not yet opened for business as of that date.

At the next regularly scheduled legislative session, City Council passed a resolution imposing an additional 90–day moratorium on the establishment of new adult uses within Colorado Springs.

Ultimately, in September 1992, City Council enacted an ordinance which changed the designation of adult bookstores from "adult use" to "sexually oriented business" and changed the 1000–foot separation requirement to a distance measured "in a straight line without regard to intervening structures or objects from the nearest property line of the proposed sexually oriented business establishment to the nearest property line" of the other use.

Because the desired site did not meet the 1000–foot separation requirement under the new ordinance, plaintiff was unable to open his bookstore at that location and eventually sold the property. He filed suit for declaratory judgment and damages.

I.

Plaintiff argues that the trial court erred in concluding that the enactment of the mor-

atoria was procedurally valid. He does not dispute that City Council held the power to enact such moratoria. He contends, however, that because the moratoria here effectively amended, suspended, or repealed the adult use ordinance in effect at the time of his application, such moratoria could not be validly enacted by motion or resolution. Rather, he asserts, they could only be legitimately established by another ordinance. We agree.

Although the question has not been addressed in Colorado, as a general proposition of municipal law, an ordinance cannot be amended, modified, or suspended by resolution. *See City of Harrison v. Snyder,* 217 Ark. 528, 231 S.W.2d 95 (1950); *Phillips Petroleum Co. v. City of Park Ridge,* 16 Ill.App.2d 555, 149 N.E.2d 344 (1958); *Dolan v. Borough of Tenafly,* 75 N.J. 163, 380 A.2d 1119 (1977).

This is because an ordinance is a legislative act. In contrast, a resolution is a ministerial act which relates to some administrative business of the municipality. *See Inganamort v. Borough of Fort Lee,* 72 N.J. 412, 371 A.2d 34 (1977). Although the latter is merely a declaration of the will of the municipality in a given matter, the former prescribes general rules of conduct and requires public notice and public participation. *See City of Tuscola v. D & B Refuse Service, Inc.,* 131 Ill.App.3d 168, 86 Ill.Dec. 419, 475 N.E.2d 633 (1985) (it is not reasonable to require individuals seeking to determine the propriety of a contemplated course of conduct to look through multitudinous resolutions or other ministerial orders as well as the municipal ordinances); *Sommerfeld v. City of Seward,* 221 Neb. 76, 375 N.W.2d 129 (1985) (the local legislative process should provide easy and accessible identification of the ordinances governing the conduct of persons within the municipality and should provide for public notice and opportunity for participation).

Accordingly, a municipality may not amend, repeal, or suspend an ordinance by any act of less dignity than the ordinance itself. *See McCarthy v. Village of Marcellus,* 32 Mich.App. 679, 189 N.W.2d 80 (1971); *Cross v. Soderbeck,* 94 Wis.2d 331, 288 N.W.2d 779 (1980). And, similarly, if a municipality elects to establish zoning regulations by ordinance, any change of such zoning regulations must be accomplished by ordinance as well. *See Harrell v. City of Lewiston,* 95 Idaho 243, 506 P.2d 470 (1973); *cf.* Colorado Springs City Charter, art. III, § 16 ("No ordinance or section thereof shall be amended or repealed except by ordinance adopted in the manner provided in this Charter.").

Here, City Council, by motion, specifically prohibited new adult uses "while we examine how we measure the distance," and passed a resolution that "the City shall not issue any permits, licenses or other authorization for the establishment of adult uses" for a period of ninety days. As defendants have admitted both here and in the trial court, these actions were legislative, "directed to the community at large, not [at] one particular piece of property." And, importantly, defendants do not claim that the moratoria were propelled by an emergency which precluded normal ordinance procedure.

Defendants contend, however, that because the moratoria inhibited new adult uses only temporarily, it was not necessary that they be enacted by ordinance. Specifically, they assert that the four month suspension of new adult uses did not affect the existing zoning ordinance. We are not persuaded.

A moratorium is "a suspension of activity; a temporary ban on the use or production of something." *Webster's Third New International Dictionary* 1469. "A city may suspend an ordinance by ordinance. But the *operation* of an ordinance cannot be suspended by the act of municipal officers, even though the suspension is attempted by resolution." 5 E. McQuillan, *Municipal Corporations* § 15.42 (3rd ed. 1989) (emphasis added).

The ordinance in effect at the time of plaintiff's application set forth a 1,000–foot distance requirement and a specific method of measurement. Plaintiff met the ordinance requirements at that time and was so informed by zoning officials.

It was consequently the administrative duty of the city officials involved to issue plaintiff any necessary permits or approve

any necessary applications. The only ground for the refusal to do so was the moratoria prohibiting such issuance or approvals. Thus, the moratoria changed the administrative operation of the zoning ordinance as effectively as if it had been amended or repealed. *See Phillips Petroleum Co. v. City of Park Ridge, supra; Tube Bar, Inc. v. Commuters Bar, Inc.,* 18 N.J.Super. 351, 87 A.2d 341 (1952).

Whether categorized as a suspension of the zoning ordinance, a temporary amendment, a temporary reclassification, or a temporary setting aside of the ordinance as to new adult uses, these actions had the practical effect of changing the rules temporarily pending a study which was expected to result in a permanent change. *See Simpkins v. City of Gaffney,* 431 S.E.2d 592 (S.C.App.1993) (city could not validly enact by motion a moratorium on the construction of duplexes pending amendment of the current zoning ordinances); *cf. People ex rel. J.C. Penney Properties, Inc. v. Village of Oak Lawn,* 38 Ill. App.3d 1016, 349 N.E.2d 637 (1976) (village lacked authority to enact by motion a moratorium suspending application of ordinance governing restaurant applications). That existing adult uses continued to operate during the moratoria as, in essence, *de facto* nonconforming uses, or that the suspension was not permanent, does not change this result.

We agree that a "stop gap" zoning moratorium of temporary and reasonable duration may be a useful procedure in local government land use planning. However, such a moratorium must be instituted under and in accordance with applicable law. *See Dollaghan v. County of Boulder,* 749 P.2d 444 (Colo.App.1987).

The moratoria here suspended, and thus temporarily changed, the operation of the current zoning ordinance. Accordingly, since they were not enacted by ordinance, they were ineffective.

## II.

Because we hold the moratoria to be invalid on procedural grounds, we need not address plaintiff's other contentions.

## III.

Two of plaintiff's claims for relief sought redress under 42 U.S.C. § 1983 (1988) for violation of the First Amendment, and as the successful party in the trial court, defendants were awarded attorney fees pursuant to 42 U.S.C. § 1988 (1988). Plaintiff has challenged this award of fees on appeal but, insofar as defendants now have withdrawn their claim to attorney fees, and as our disposition of this matter necessarily vacates the trial court's award of those fees, we need not address that issue.

However, both parties agree that, if the trial court's entry of summary judgment is reversed, the case should be remanded for trial on the issue of damages and plaintiff's request for attorney fees.

Accordingly, the judgment is reversed, and the cause is remanded for further proceedings in accordance with this opinion.

NEY and TURSI *, JJ., concur.