## WESLEY M. CHANDLER v. RAYMOND J. KROISS AND OTHERS.

190 N. W. (2d) 472.

September 10, 1971—No. 42730.

*Dorsey, Marquart, Windhorst, West & Halladay, John D. Levine,* and *Robert A. Heiberg,* for appellants.

*Kueppers, Strong, Kueppers & Von Feldt* and *Harry P. Strong, Jr.,* for respondents Kroiss.

*Douglass, Bell, Donlin, Schultz & Petersen* and *Thomas M. Sweeney,* for respondent village.

*John J. Waters,* for respondent Pemble Development, Inc.

Heard before Knutson, C. J., and Nelson, Peterson, Kelly, and Rolloff, JJ.

CLARENCE A. ROLLOFF, JUSTICE.*

Plaintiff appeals from a judgment upholding the grant of a special-use permit to defendants by the village of Shoreview.

The subject of this action is part of 107.8 acres of land in the village of Shoreview, Ramsey County, purchased by Raymond

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

J. Kroiss in 1960. Mr. Kroiss, his wife Margaret, and Ray Kroiss Construction, Inc., are all defendants herein and for convenience will be referred to as Kroiss. When purchased, the land was zoned agricultural. By August 4, 1967, the northerly 600 feet was zoned M-1 (light manufacturing), a southerly portion of the property was zoned R-4 (nursing homes, hospitals, etc.), and the remainder was zoned R-1 (one-family residences).

Following the state legislature's 1965 enactment of the Municipal Planning Act (Minn. St. 462.351 to 462.364), the Shoreview Planning and Zoning Commission commenced preparation of a comprehensive municipal plan which was adopted by the Shoreview Village Council in final form on November 8, 1967. In anticipation of the adoption of the comprehensive plan, the council enacted Ordinance No. 165 (Shoreview Municipal Code, § 913.130) and Ordinance No. 167 (Municipal Code, § 913.091) on July 24, 1967. These two ordinances gave flexible control of land usage and development to the council. Ordinance No. 165 permitted the council to grant or deny a special-use permit in any zoning district and, when granting such a permit, to impose any conditions it considered necessary to protect public health, safety, and welfare. Section (A)(1) of the ordinance requires that the village clerk maintain a record of all special-use permits issued, including information on the use, location, conditions imposed by the council, and other appropriate information. Section (B) provides in part:

"In granting a special use permit, the Council shall consider the advice and recommendations of the Planning Commission and the effect of the proposed use upon the health, safety, morals, general welfare of occupants of surrounding lands, existing and anticipated traffic conditions, including parking facilities on adjacent streets and land, and the effect on the values of property and scenic views in the surrounding area, and the effect of the proposed use on the comprehensive municipal plan."

Ordinance No. 167 relates to planned unit development.[1] The stated purpose of the ordinance is to "provide a means to allow design flexibility by substantial variances from the provisions of the Municipal Code." Planned unit developments may be excluded from certain requirements of the ordinance, provided the following conditions are complied with:

"(1)  A complete detailed plan is submitted to the Planning Commission, showing the location of all proposed structures, driveways, landscaping, parking, screening, sidewalks, access drives, land used, * * *.

"(2)  The Council, upon review of the application and plan submitted, shall find that the proposed planned unit development is fully consistent with the purposes of this Ordinance and in conformity with the comprehensive municipal plan.

"(3)  The planned unit development shall conform with the plan as submitted to the Planning Commission and any variations from said plan shall require prior approval of the Planning Commission."

On August 4, 1967, Kroiss filed an application with the council for an extension of the M-1 zoning and for a special-use permit for a planned unit development, at the same time, filing a proposed plan of development for the entire property. The plan was reviewed by Carl Dale, planning consultant for the village, and then presented to the planning and zoning commission along with Mr. Dale's report thereon. The commission held two hearings on the application. All interested persons were given ample

---

[1] A planned unit development is defined by the ordinance to include all developments having two or more building uses or structures on a single parcel of land and may include apartment projects involving more than one building, multi-use structures such as apartment buildings with retail stores at ground-floor level, town houses, and similar projects. Town houses are defined as attached dwelling units, each with a separate entrance to the front and rear yards. Town houses may be permitted in any residential district, following the issuance of a special-use permit, provided they meet the stated minimum area requirements.

opportunity to appear and voice objections to the issuance of the special-use permit. On October 4, 1967, the commission recommended to the village council that the application of Kroiss be granted and forwarded all data to the council. On November 8, 1967, after notice was duly given to all residents who might be affected by any change in the zoning ordinance or by the granting of said special-use permit, the council held a public hearing on the application, at which hearing only one property owner spoke in opposition to the approval of the application. The minutes of that council meeting show that the report of the planning and zoning commission and the commission recommendation, as well as the detailed report of the planning consultant, were then before the council. In addition, the council had before it defendants' exhibits 14, 15, and 16 and plaintiff's exhibits 1 and 46, the exhibits which constituted the proposed plan. These exhibits were in sufficient detail to comply with the requirements of Ordinance No. 167. The village council unanimously granted the application on November 8, 1967, simultaneously voting to amend the official zoning map of the village to reflect the rezoning of Kroiss' property. The permit itself was not drafted until April 1968, at which time seven special conditions or restrictions were included in the wording of the permit. While the minutes of the council meeting do not reflect these conditions, there was testimony that the council discussed certain of the restrictions at the council meeting, while other conditions were basically provisions from the city ordinance.

In 1969, defendant Pemble Development, Inc., became interested in a portion of the land. On April 9, 1969, Kroiss applied to the council on behalf of Pemble for an amendment to the special-use permit, submitting a new development plan covering only 12 of the 107.8 acres. This application was withdrawn and then filed again with the village on May 6. A public hearing on that request, held by the planning and zoning commission on June 10, 1969, afforded interested property owners an opportunity to be heard on the merits of the proposal. The planning

and zoning commission then voted to recommend to the village council the granting of the amendment. On June 16, 1969, the council approved the amendment.

Plaintiff, Wesley M. Chandler, subsequently brought this action on behalf of himself and all others similarly situated seeking judgment that the special-use permit and amendment thereto are invalid and that certain sections of the Shoreview Municipal Code are unconstitutional. The Ramsey County District Court denied any relief and plaintiff appeals. We affirm.

■ Plaintiff claims that since multiple dwellings are not a use permitted in an R-1 zone under the Shoreview ordinances, Kroiss should have applied for a variance rather than a special-use permit. In support of this contention, plaintiff cites Westling v. City of St. Louis Park, 284 Minn. 351, 170 N. W. (2d) 218, and, to the extent that Westling relies upon it, Zylka v. City of Crystal, 283 Minn. 192, 167 N. W. (2d) 45. Plaintiff is correct in pointing out that those two cases definitively set out the difference between a "variance" and a "special use" in this state. In the instant case, however, what is before us is neither a "variance" proceeding nor one for a "special use" but a hybrid of the two. As conceived and implemented, the Shoreview planned unit development ordinance provides: "It is the intent of this Section to provide a means to allow design flexibility by substantial variances from the provisions of the Municipal Code, including uses, * * *." It is clear from the language of this ordinance that the intent was to permit the council to expeditiously allow substantial variances from the provisions of the Municipal Code. Ordinance No. 167 provides that this is to be accomplished by means of a special-use permit.

The Kroiss application was granted on November 8, 1967. At that same meeting, but later in point of time, the comprehensive municipal plan was adopted. The resolution by which the comprehensive plan was adopted implicitly recognized the unique function of the planned unit development concept when it stated:

"All developments or development plans approved by the Vil-

lage Council which are not in conformity to the plan shall be considered as amendments to the plan and shall be so noted by the Planning and Zoning Commission."

Thus, approval of a planned unit development amends the comprehensive plan to the extent that the comprehensive plan is not otherwise in conformity with it. To the extent that the result of the proceeding for approval of a planned unit development thus alters the established, allowed land usages of the village, it has the same effect as would a succession of variances or rezonings. So long as procedures for securing a permit for a planned unit development fairly provide for airing the topic, and those before us have done so, we cannot say that the concept, as implemented, is impermissible. Although we harbor some reservations about the validity in all cases of a provision that council action not in conformity with the comprehensive village plan may act as an automatic amendment thereto, the facts of this case indicate that the permit which allows the planned unit development was granted only after a procedure which included public hearings.

■ Plaintiff disputes that there was compliance with required procedure and claims that the permit is invalid because the village council failed to grant the permit in a resolution, failed to make findings of fact, and failed to keep a record of the reasons for its decision, as the ordinance and case law required. It cannot be denied that the records of the village leave much to be desired, and that of itself invites litigation. However, compliance with the mandates of the ordinance and case law is sufficient to require rejection of these contentions.

Ordinance No. 165 provides that the granting of a special-use permit shall be by resolution. However, the failure to act by formal resolution is not fatal. Mushel v. Benton County, 152 Minn. 266, 188 N. W. 555, involved an act of the legislature which authorized the issuance of bonds by counties for road construction work by resolution. The county board passed a resolution which was premature. In a challenge to the issuance of the bonds, the

court held that the acts of the county board thereafter did for all purposes readopt and repass the resolution. The court stated (152 Minn. 270, 188 N. W. 557):

"* * * The form in which the board expressed itself was not of vital consequence. It is the substance that controls."

In Lindahl v. Independent School Dist. No. 306, 270 Minn. 164, 133 N. W. (2d) 23, a challenge to the validity of a bond election was based on a statute which required a school board resolution to initiate a bond election. On March 25, the board passed a motion to hold a bond election on April 19. No valid resolution was ever adopted prior to the election. The bond issue was approved by the electorate. This court upheld approval of the election, stating (270 Minn. 168, 133 N. W. [2d] 26):

"* * * Generally, where the statute requires a resolution, any official action, though not in form a resolution, may be one in legal effect. Thus, although the motion made by the board lacked the formal attributes of a resolution, the deficiency of form is not fatal."

A good resume of cases dealing with resolutions is found in Renner v. New Ulm Police Relief Assn. 282 Minn. 411, 165 N. W. (2d) 225. We conclude that if the special-use permit is otherwise valid, the fact that it was granted by motion rather than by resolution is not fatal.

The village council did not make findings of fact but the evidence sustains the conclusion that the council considered all the criteria set forth in Ordinances Nos. 165 and 167 before granting the permit. Two of the councilmen attended the public meetings of the planning and zoning commission. At these two meetings, the Kroiss plan was discussed by Kroiss; by Mr. Nason, his land planner; by Mr. Dale, the village planning consultant; and by others attending the meetings. The planning and zoning commission had before it the written report of Mr. Dale. The various criteria set forth in Ordinance No. 165 were, at least substantially, covered in these discussions. The planning and zoning commission recommended to the council that the permit be granted,

and this recommendation, as well as a revised report by Mr. Dale dated October 29, 1967, were before the council at the November 8, 1967, hearing at which it granted the application. Therefore, unlike the situation in Zylka v. City of Crystal, *supra,* the trial court here was not faced with a prima facie case of arbitrary council action, nor does the record compel such a finding. See, C. G. Rein Company v. Bjorndahl, 290 Minn. 562, 189 N. W. (2d) 162. The Kroiss permit was the first one granted by the village, and it is understandable that the procedures were not as complete as one would prefer, but this court is of the opinion that the village council substantially complied with the requirements of the ordinances in question.

■ Plaintiff urges that the Kroiss development plan was not in harmony with the comprehensive municipal plan. While there was some testimony at trial that the proposed development would result in increased traffic and depreciation of property values and would deleteriously affect community health, safety, morals, general welfare, and environment, the record as a whole does support the trial court's finding that the council's action was not arbitrary. We therefore reject this contention.

■ Plaintiff next challenges the validity of the Pemble amendment to the Kroiss special-use permit. It is plaintiff's claim that the council's approval procedure violated village ordinances; that the Pemble plan could not be an amendment of the previously granted special-use permit because it was so different a plan; and that the Pemble plan itself does not comply with village ordinance requirements. The trial court found that the Pemble amendment proceedings were in conformity with all village ordinances, and we must agree.

An amendment to a special-use permit is authorized by Ordinance No. 165. Although the ordinance establishes no express procedure by which the council is to handle an amendment application, the ordinance does state that such application "may be administered in a manner similar to that required for a new special use permit." § 913.130(C)(10). Planner Dale prepared

a report for the planning and zoning commission on the proposed amendment. The commission held a public hearing on the application for amendment on June 10, 1969, pursuant to published and mailed notice. Ten property owners and Pemble's president were heard at that meeting. The commission recommended to the council that the amendment be granted and that the council initiate proceedings to place restrictions on the special-use permit on the balance of the property. On June 16, the council granted the amendment with 12 conditions. This procedure met the ordinance requirements.

While it is true that the Pemble plan differs from the Kroiss plan as to size, number, capacity, and placement of buildings and parking areas, these changes do not so affect the basic, approved use for the property as to preclude the Pemble plan from being an "amendment" to the earlier permit. The major difference between the two plans is an alteration of proposed street layout. Despite this change, Dale in his report stated that he felt the Pemble plan was actually better than the Kroiss plan and that he recognized further changes would have to be made in the Kroiss plan to coordinate it with the Pemble plan. The council was aware of this and accordingly required a site plan for the remainder of the property included in the original permit as a condition to the granting of the second building permit for the 12 acres of property covered by the amended permit. In the final analysis, the Pemble amendment does not change the multifamily usage allowed by the original Kroiss permit, except in so far as it improves the design of the project. Under the circumstances presented here, an amendment with safeguarding conditions appears to have been a highly expeditious method of procedure.

Although it might have been wiser for the council to delay approval of the Pemble amendment until more complete plans were available, the council's conditional approval should have the same effect as requiring that compliance with all substantive ordinance requirements be shown before commencement of actual development pursuant to the permit. The plans submitted

in support of the amendment are in at least substantial compliance with ordinance requirements. Since one of the conditions of the Pemble permit is that there shall be compliance with all village ordinances, it would be premature to now find that actual development will not comply with village ordinance requirements. Thus, any technical deficiency in the submitted plans will be cured before it can operate to the lasting detriment of plaintiff.

■ Plaintiff also claims that Ordinances Nos. 165 and 167 are unconstitutional because they are too uncertain, imprecise, and vague. That claim is without compelling merit.

The judgment of the trial court is affirmed.

Affirmed.