529 P.2d 1285

George B. SAVIERS et al., Petitioners-
Appellants,

v.

Ken RICHEY, Mayor of the City of Ketch-
um, Idaho, et al., Defendants-
Respondents,

v.

SELAG DEVELOPMENT COMPANY, a cor-
poration, Intervener-Respondent.

No. 11266.

Supreme Court of Idaho.

Dec. 31, 1974.

Donart & Higgins, Ketchum, for peti-
tioners-appellants.

St. Clair, St. Clair, Hiller & Benjamin,
Ketchum, for defendants-respondents.

Kneeland & Laggis, Ketchum, for inter-
vener-respondent.

SHEPARD, Chief Justice.

This is an appeal from a denial of a pe-
tition for a Writ of Mandate by the dis-
trict court. This case involves an applica-
tion by intervener-respondent Selag Devel-
opment Company to the City of Ketchum
for approval of a Planned Unit Develop-
ment to be located within the City of Ket-
chum and in conformance with the zoning
ordinance of that city. The planning and
zoning commission of the city recom-
mended approval of the project and the
city council thereafter granted approval.
Appellants who are neighboring property

owners thereafter sought the issuance of a Writ of Mandate to require the city council to deny respondent-intervener's petition. We affirm the action of the district court denying the issuance of the Writ of Mandate.

Garnet Street is located within the City of Ketchum, Idaho. It extends easterly from U. S. Highway 93 for approximately 820 feet and varies in width between 25 and 29.5 feet. That portion of the road is improved but an unimproved private drive extends an additional 184 feet from the eastern terminus of Garnet Street. The appellants are landowners adjacent to Garnet Street which furnishes ingress and egress to their properties. There was testimony that Garnet Street is one of the worst maintained in the City of Ketchum, particularly in regard to winter snow removal.

Intervener-respondent Selag Development Company acquired purchase options upon land totalling 22.69 acres located near the eastern end of Garnet Street. On that land Selag proposes to erect a 192 unit condominium utilizing Garnet Street as the principal access thereto. The land upon which Selag proposes to erect its development (Balsamroot) is zoned "LR" (limited residential) as is most of the land along Garnet Street. Ordinance 85 of the City of Ketchum permits one family dwellings, schools, churches, parks, playgrounds, golf courses and essential public utility and service installations within limited residential districts.

In Section V, Ordinance 85, however, there is also provision that planned unit developments may be allowed within a limited residential district upon favorable recommendation by the city's planning and zoning commission and thereafter approval by the city council. That portion of the Ordinance provides in pertinent part:

"(6) Unit developments, which may include any uses permitted in the T District, shall be allowed in the LR, GR, T and AF Districts, subject to being shown on a plan as defined, processed and approved as follows:

"(a) A unit development is a project located on at least two acres of land controlled by one owner, corporation or agency, including usable open space for the mutual benefit of the entire tract, and designed to provide variety and diversity through the variance of normal zoning standards so that maximum long range benefit can be gained and the unique features of the site preserved and enhanced;

\* \* \* \* \* \*

"11.2 REVIEW PROCEDURE

"(1) The Planning and Zoning Commission and City Council shall be guided in their review of each use requesting approval by special review by the Purpose of this zoning ordinance, as stated in Section I hereof, by the unique conditions of the surrounding neighborhood, and by the Citywide need for such uses."

The hereinabove referenced Section I containing the purposes provides as follows:

"These regulations are designed and enacted in accordance with [title 50, chapter 12 of the Idaho Code] for the purpose of promoting the health, safety, morals and general welfare of the present and future inhabitants of Ketchum, Idaho by accomplishing, among others, the following specific purposes;

"RESIDENTIAL AREA SHOULD BE PROTECTED AGAINST . . .

"Fire, explosion, noxious fumes, and other hazards; offensive noise, vibration, smoke, dust, odors, heat, glare and other objectionable influence; The invasion of abnormal vehicular traffic; and excessive congestion of buildings."

All of appellants' petition and the only evidence presented at the hearing thereon was that the construction of the Balsamroot development coupled with the use of

Garnet Street as an access, would engender an "invasion of abnormal vehicular traffic."

Following the approval of Selag's Balsamroot project, appellants filed this action seeking a Writ of Mandate to direct the Mayor and city council to abide by Ordinance 85 by disallowing the use of Garnet Street as a means of access to the Balsamroot project. Selag appears in the action as an intervener-defendant. Following a hearing upon the merits, the petition for mandate was denied, the lower court finding that the city council had not abused its discretionary power under Ordinance 85.

It is first asserted by appellants that the language of Ordinance 85, particularly Sections 1 and 11, *supra*, constitutes a mandate to the Mayor and city council to deny Selag's application with respect to the proposed use of Garnet Street.

A Writ of Mandate will issue to a party who has a clear legal right to have an act performed if the officer against whom the writ is sought has a clear duty to act and if the act be ministerial and not require the exercise of discretion. State v. Adams, 90 Idaho 195, 409 P.2d 415 (1965). It was specifically held in Moerder v. City of Moscow, 74 Idaho 410, 263 P.2d 993 (1953) that public officials may under some circumstances be compelled by Writ of Mandate to perform their official duties although the details of such performance may be left to their discretion and that city officers could be compelled by Writ of Mandate to enforce an ordinance of the city.

We then must determine if the city council had a clear ministerial duty to deny approval of Selag's application to the extent that Garnet Street was to be used as an access route for the Balsamroot project. Ordinance 85 does not impose such a legal duty. Unlike a prohibition against wooden buildings within a certain area, Beem v. Davis, 31 Idaho 730, 175 P. 959 (1918) or the establishment of setback lines, Moerder v. City of Moscow, *supra,* the term "abnor-

mal vehicular traffic" is not capable of precise application to the instant factual situation to the extent that we may legally state that no discretionary decision on the part of the city council was necessary. The term "abnormal vehicular traffic" might be said to refer to the quantity of traffic or the type of vehicle or the permissible speed of travel, or perhaps all of these. It is also peculiarly susceptible of subjective interpretation. To the present residents of Garnet Street any increase in traffic might be deemed abnormal.

We deem it clear that the officials of the City of Ketchum were required to exercise their discretion in the determination of whether the issuance of a permit of the Balsamroot project would result in an "abnormal vehicular traffic" upon Garnet Street when used as an access to the Balsamroot project. We further note that a full hearing on the merits was held in the lower court and that court held adverse to the contentions of the appellants herein. We find no error.

Appellants' remaining assignments of error are directed at the asserted invalidity of Ordinance 85 of the City of Ketchum. They contend that the Ordinance is in violation of both the statutes of the State of Idaho relating to the powers of municipalities in regard to zoning and in violation of the Fourteenth Amendment of the Constitution of the United States. Respondents object to that contention of appellants on the basis that they cannot in one breath seek a Writ of Mandate requiring municipal officials to carry out duties imposed upon them by an ordinance and in the next breath argue that the ordinance under which it seeks relief is nevertheless invalid. In view of our disposition of this case we need not resolve this convoluted reasoning problem.

We answer appellants' assertion regarding the invalidity of the Ordinance by noting that such question is not before us. The entire case up to the point where it arrived in this Court was one in which plaintiffs sought relief from an alleged in-

vasion of abnormal vehicular traffic along the street upon which they resided. The petition of appellants was framed in this and only in this regard. We have examined the trial transcript and find no evidence to the effect that the development sought to be constructed by Selag contradicts or violates any restriction relating to the development of LR zoned property. There was no testimony critical of the proposed development being violative of the principle of uniformity within any zoning area. The only testimony in any way touching upon lack of uniformity was that indicating the lack of uniformity in the *appellants'* properties relating to set-back.

Perhaps the entire attitude of the plaintiffs in this case is incapsulated by the following testimony of one of the plaintiffs:

"Q. Is it your real position that you don't want that area in there developed?

"A. I don't object to the development. I object to the fact that they want to use the road. As far as the development is concerned it has no bearing on it.

"Q. But you resent they want to use the road in front of the house? (her house)

"A. Yes. I want it left as a private road."

At no time in the lower court was there any discussion or testimony that the proposed development would violate any zoning concept relating to the number of structures to be built upon the tract; the type of structures; their location upon the tract; their height, width, design, method of construction, distance from lot lines or street lines. Likewise there was no testimony even inferentially critical of approval of the proposed development except and solely as such proposed development might engender additional traffic along the street upon which appellants reside.

We further note that although appellants complain of what was in effect a change in zoning without any notice as required by statute the record in this case is completely devoid of any evidence to support

their contention. Since that question was not litigated below, the lack of record thereon is not surprising. The only testimony in this regard was that of appellants, some of whom indicated that they presented written or oral objection to somebody at some hearing. The body, the type of hearing, the location, the notice thereof, if any, are all unknown.

This Court is then left with the bare assertion that the Ordinance in question is violative of the statutes of Idaho relating to zoning by municipalities and violative of the federal constitution. We are thus asked to consider the validity of Ordinance 85 in a vacuum with no record before us to indicate how the Ordinance was or was not applied; and this we must refuse to do.

Just last year in Ready-to-Pour, Inc. v. McCoy, 95 Idaho 510, 511 P.2d 792 (1973), this Court had for review the actions of the City of Ketchum under the same comprehensive zoning ordinance (No. 85) as is under consideration here. Although that case did not involve the validity of the ordinance, both the majority and the dissenting opinion emphasized the presumption of its validity and the presumption of validity of the actions of the city officials acting pursuant thereto. See also 8A McQuillan, Municipal Corporations, § 25.296 (1965 Rev.Ed.).

It may well be as asserted by appellants that the thorny problems resulting from the concept and growth of Planned Unit Developments (PUD) in Idaho and the resultant clash with orthodox and euclidean zoning concepts will demand resolution by this Court. Krasnowiecki, Planned Unit Development: A Challenge to Established Theory and Practice of Land Use Control, 114 U.Pa.L.Rev. 47 (1965–66); Cheney v. Village 2 at New Hope, Inc., 429 Pa. 626, 241 A.2d 81 (1968); Orinda Homeowners Committee v. Board of Supervisors, 11 Cal.App.3d 768, 90 Cal.Rptr. 88 (1970); Moore v. City of Boulder, 29 Colo.App. 248, 484 P.2d 134 (1971); Planned Unit Developments and Floating Zones, 7 Real Prop., Prob. and Tr.J. 61 (Spring

1972); Chandler v. Kroiss, 291 Minn. 196, 190 N.W.2d 472 (1971).

Nevertheless such resolution must await an appropriate setting wherein the issues are framed, the facts disclosed and supported by the record, and all parties protected in their right to litigate the question. The case at bar does not meet those demands and will not be decided in the abstract. Morrow v. Wm. Berklund Forest Products Co., 81 Idaho 428, 346 P.2d 623 (1959); Hansen v. Devaney, 82 Idaho 488, 356 P.2d 57 (1960); Hale v. Heninger, 87 Idaho 414, 393 P.2d 718 (1964).

The judgment of the district court is affirmed. Costs to Respondents.

DONALDSON and McQUADE, JJ., and BURTON, District Judge, concur.

BAKES, J., concurs in the result.