720 P.2d 210

Carl CURTIS, dba Skyline Development Company, Plaintiff-Appellant,

v.

CITY OF KETCHUM, a municipal corporation, Defendant-Respondent,

and

Gerald Seiffert, Mayor of the City of Ketchum, Idaho; Josepf Koenig, Jack Corrock, Barry Luboviski and Phillip Puchner, who collectively constitute the City Council of the City of Ketchum, Idaho, as individuals and as representatives; Deborah S. Flood, Curtis Paige, Sheilah Dolsot, Guy Gilson, who collectively represent the Zoning Commission of the City of Ketchum, Idaho, as individuals and as representatives; Linda Haavik, as individual and as Ketchum City Planner; Jim Jaquet, as individual and as Ketchum City Administrator; Wesley Nash, as individual and as Ketchum Building Inspector; James Phillips, as individual and as Ketchum City Attorney; and George B. Saviers, Defendants.

No. 15699.

Supreme Court of Idaho.

June 2, 1986.

**28**

E. Lee Schlender, Ketchum, for plaintiff-appellant.

James W. Phillips, Ketchum, for defendant-respondent City of Ketchum.

BAKES, Justice.

Carl Curtis appeals a decision of the district court affirming denials of various subdivision plat applications by the Ketchum City Council. Curtis contends the court erred in (1) conditioning his filing of an amended complaint on payment of $10,000 in attorney fees; (2) holding that the city was not estopped from denying Garnet Street as adequate access to the proposed subdivision; (3) holding that no inverse condemnation of appellant's property had occurred; and (4) awarding respondent attorney fees as the prevailing party. We affirm the district court.

Appellant (Curtis) is engaged in the property development business as Skyline Development Company. Curtis is the current owner of a 30-acre parcel of undeveloped real property in Ketchum known as the Skyline Subdivision. The property is currently zoned limited residential.

The relevant history of the property in question begins with Selag Development Company, a prior owner, which in 1971 submitted a proposal for a 190-unit condominium complex to the Ketchum Zoning Commission. The zoning commission recommended tentative approval. On July 2, 1972, the city council adopted the commission's recommendations and tentatively approved the plat plan. One of the proposed access routes included Garnet Street.

The use of Garnet Street was subsequently challenged in writ of mandamus proceedings by property owners residing on the street. The writ sought to compel the city council to abide by then existing zoning ordinance No. 85 and disallow use of Garnet Street as a means of access. The district court denied the writ on grounds that plat approval was a discretionary duty and that the city council had not abused its discretion. On appeal, this Court upheld the lower court's decision. *Saviers v. Richey*, 96 Idaho 413, 529 P.2d 1285 (1974).

Selag Development Company abandoned the project (prior to any construction) and sold the property to Mr. and Mrs. James Ball. The Balls subsequently attempted to

develop the property, submitting applications to the zoning commission in 1977 and 1978 for a project known as the Skyline Subdivision. All of these attempts ultimately met with failure at the city council level. The predominant reason for denial of the Balls' applications appears to have centered on lack of adequate access to the property, in particular the use of Garnet Street as a means of access.

During the time period that the Balls owned and attempted to develop the subject property, the City of Ketchum had enacted three new zoning ordinances. Ordinance No. 208 replaced former Ordinance No. 85 and was adopted in April, 1974. Under the new zoning ordinance, the property remained designated limited residential, but planned unit developments (condominiums) were not allowed. Ordinance No. 252, adopted in April, 1977, is a subdivision ordinance. Section 11 of that ordinance imposed certain conditions for hillside subdivisions. The topography of the Skyline Subdivision rendered it subject to Section 11 of Ordinance No. 252. Finally, the city adopted Ordinance No. 276 in April, 1978. This ordinance is a street standard ordinance which requires, among other things, that street grades not exceed 7%. The denial of Balls' applications rested in large part upon the failure to comply with Ordinances Nos. 252 and 276 in that the grade of Garnet Street at the area of access to the subdivision was in excess of 12%.

Mr. Curtis obtained an option to purchase the Ball property on September 15, 1978, just fifteen days after Balls had submitted their last subdivision application to the zoning commission and ten days prior to the commission's denial of that application. Five days prior to the city council's final action on the the Ball application, Curtis assigned his option to L.A.M. Enterprises. On November 6, 1978, the city council denied the Ball application based in part on inadequate access to the proposed subdivision.

On December 12, 1978, Curtis re-obtained the property by warranty deed from L.A.M. Enterprises. On December 18, 1978, Curtis filed a notice of claim against the City of Ketchum and certain named individuals under the Idaho Tort Claims Act. On December 22, 1978, Curtis filed a lawsuit against the city and the named individuals in district court.

In his initial complaint, Curtis named as defendants the City of Ketchum and the following individuals in both their representative and individual capacities: the four members of the city council, five members of the zoning commission, the mayor, the planning administrator, the building inspector, and the city attorney. Curtis's complaint sought over $3,000,000 in damages as well as a writ of mandamus to compel issuance of all necessary permits and approvals for the proposed subdivision, and to compel the city to bring certain of the undedicated streets up to current street standards to provide access for the proposed subdivision.

Subsequent to his initial complaint, the city adopted Zoning Ordinance No. 316 on December 28, 1979. This new ordinance replaced Ordinance No. 252 and prohibited construction on lots where the hillside slope exceeds 25%. During the pendency of the initial suit, and subsequent to the adoption of Ordinance No. 316, Curtis tried twice to have subdivision plats approved. Both efforts, in 1981 and 1982, were unsuccessful in large part because the applications failed to comply with the requirements of Ordinance No. 316. As then designed, roughly 22% of the Skyline Subdivision could not be developed because the slope of certain lots exceeded a 25% grade.

Trial was set for December 14, 1981. This trial date was later vacated because Curtis had retained new counsel. That counsel subsequently withdrew from the case on August 28, 1981. Subsequently, respondent filed a motion to dismiss for appellant's failure to secure new counsel pursuant to court order. Finally, after going through two attorneys, Curtis obtained the services of his present attorney who appeared before the trial court on November 3, 1981.

On November 20, 1981, Curtis, through his attorney, filed a motion for leave to file an amended complaint. The amended complaint sought for the first time to dismiss the fourteen individually named defendants and brought additional allegations regarding the 1981 subdivision application which was denied by the Ketchum City Council on August 17, 1981. The amended complaint further requested an order requiring the city to plan the development of Curtis's property. The court granted the motion to file an amended complaint, but conditioned that filing upon payment by the appellant of a portion of the attorney fees incurred by the respondent in defense of the dismissed actions against the named city officials. The conditioned filing of the amended complaint was pursuant to Rule 15(a), I.R.C.P.

On May 10, 1984, the court again granted appellant leave to file a second amended complaint. The second amended complaint brought additional allegations regarding the 1982 subdivision application denied upon appeal to the city council on August 15, 1983. Respondent objected to the second amended complaint and that portion of the first amended complaint which sought judicial review of the denial of the respective subdivision applications in that such judicial review was not sought within the 60-day statutory time period mandated under I.C. § 67–6519. Trial was held four days following the filing of the second amended complaint.

In its findings of fact and conclusions of law the district court held, *inter alia,* that:

(1) its review was limited to the provisions of I.C. § 67–5215(f) and (g);

(2) Curtis had failed to establish that zoning ordinances Nos. 208, 252, 276 and 316 were constitutionally infirm or otherwise invalid;

(3) Curtis was barred from seeking relief under the Idaho Tort Claims Act because he failed to await the statutory 90-day time period before filing his suit as required by I.C. § 6–909 and 6–910;[1]

(4) Curtis could not rely on the outcome of the *Saviers v. Richey* litigation because Curtis was not a party to that litigation and, therefore, it had no *res judicata* effect as to the parties before the court.

(5) Curtis was precluded from challenging the city council's decision in denying his 1981 and 1982 applications because he failed to seek judicial review within 60 days of such denial as required by I.C. § 67–5619.[2]

(6) Curtis' appeal of the 1978 Ball application was well within the 60-day time limitation, but that he had failed to establish that the council action was in violation of constitutional or statutory provisions, in excess of the statutory authority of the municipality, made upon unlawful procedure, affected by other error of law, clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record, or arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion;

(7) no taking of Curtis's property occurred in violation of the Constitution, *i.e.,* Curtis failed to state a cause of action for inverse condemnation of his property.[3]

Appellant raises essentially four issues on appeal: (1) whether the trial court abused its discretion in conditioning the filing of plaintiff's first amended complaint

---

1. At oral argument to this Court, counsel for Curtis conceded that no tort claims action was presented by this case.

2. In reaching that conclusion, the district court also held that Curtis could not rely on his pending litigation to perfect his appeal of the 1981 and 1982 application denials, but that at a minimum he had to file amended complaints within the 60-day limit to bring those denials before the court.

3. Curtis had also alleged that the city's action in denying his plat applications had violated the due process and equal protection clauses of the United States Constitution. At oral argument to this Court, appellant's counsel characterized this aspect of his client's action as a § 1983 claim. The district court found that no basis for such claim existed. At oral argument in this Court, counsel conceded the issue.

upon first paying $10,000 in attorney fees; (2) whether the City of Ketchum should be estopped from denying the use of Garnet Street as access to the proposed subdivision; (3) whether Subdivision Ordinance No. 316 amounts to inverse condemnation when applied to appellant's real property; (4) whether the trial court erred in awarding attorney fees and costs against appellant on the grounds that defendant was the prevailing party.

## I

Appellant contends that the district court abused its discretion in conditioning the filing of his first amended complaint upon payment of $10,000 in attorney fees.

I.R.C.P. 15(a) provides that once responsive pleadings have been filed (or the action is placed on the court's calendar) any subsequent amendments to the pleadings are permitted only by leave of the district court or by written consent of the adverse party. The rule further provides that: "The court may make such order for the payment of costs *as it deems proper.*" I.R.C.P. 15(a). Appellant does not contend that attorney fees are not properly considered as costs;[4] rather, he contends that such costs may only be awarded if the amendment will result in extreme prejudice to the adverse party. We disagree.

The rule specifically commits the imposition of conditions on filing an amended complaint to the sound discretion of the district court. Absent abuse of that discretion, the district court's decision will be upheld. Under the facts of this case, we think the district court did not err in conditioning filing of the amended complaint upon payment of the attorney fees. In his initial complaint, appellant had named the individual members of the zoning commission and city council as well as the mayor and city attorney as defendants. As a result, the city was required to obtain outside counsel to defend against the action at considerable expense. Nearly three years into the litigation, appellant dismissed as defendants all fourteen individually named city officials on grounds that they were not "real parties in interest." I.R.C.P. 3. Clearly, these individuals were prejudiced by the bringing of an admittedly groundless action against them in their individual rather than representative capacities.[5] Appellant's initial lawsuit exposed these individuals to liability for nearly $3,000,000 in damages. The city incurred substantial legal expense in defending the action against the named individuals. In any event, the fees awarded upon filing of the first amended complaint could easily have been included in the final award of costs and fees. See Part IV, *infra.*

## II

As the facts indicate, the primary reason for the city's denial of the subdivision applications was lack of adequate access *via* Garnet Street. Appellant argues that since the city had once previously "approved" Garnet as access for the 1972 Selag condominium project, it should not now be heard to complain that Garnet Street is inadequate access for a smaller subdivision project. In essence, appellant contends that the city is estopped from denying his applications based on a finding that Garnet Street is inadequate access. We disagree.

In the first instance, we specifically held in *Harrell v. City of Lewiston,* 95 Idaho 243, 506 P.2d 470 (1973), that normally estoppel may not be asserted against a city exercising its police powers, *e.g.,* enactment and enforcement of zoning ordinances. We noted in *Harrell* that some jurisdictions recognize an exception to this rule "in instances evidencing expenditures of large sums of money and good faith reliance on lawful, affirmative acts of municipal officers or agents." *Harrell v. City of Lewiston,* 95 Idaho at 248, 506 P.2d at

---

4. Indeed, I.R.C.P. 54(e)(5) specifically provides that attorney fees, when awarded, are properly considered as costs.

5. At oral argument counsel for Curtis referred to that portion of the initial complaint which named the individual city officials as "the trash in the initial lawsuit."

475. However, there is nothing in the record to indicate that Curtis falls within this exception. In fact, the record indicates that at the time Mr. Curtis purchased the property in December, 1978, the city had twice rejected subdivision applications based on inadequate access *via* Garnet Street. The record discloses that Mr. Curtis was fully aware of this prior city action regarding the property.[6] Thus, any expenditures made by appellant could not possibly be said to have been made in "good faith" reliance on any prior affirmative action by the city indicating approval of Garnet Street.

In the second instance, it is dubious that the facts as disclosed by the record provide a basis for an estoppel argument. Appellant appears to argue that the inconsistent action of the city which implicates estoppel was its prior approval of Garnet Street as access in the Selag project. However, as the district court indicated, the evidence in the record concerning this prior project indicates that final approval of Garnet Street as access for the 1972 project was never given by the city. The project was abandoned by Selag prior to the issuance of any permit or other approval of the project.[7] Furthermore, as noted by the district court, appellant cannot rely on *Saviers v. Richey, supra,* for any estoppel argument as he was not a party to that litigation. Additionally, the city has, since the Selag project, enacted new zoning ordinances governing subdivision requirements.[8]

Thus, the only possible inconsistent position taken by the city regarding Garnet Street was its tentative or conceptual approval of the 1972 condominium project. However, since that time the city has consistently denied subdivision applications utilizing Garnet Street as access, such denials being premised on the grounds that Garnet Street did not comply with zoning ordinance requirements. In short, the record before both the district court and this Court fails to disclose any evidence of detrimental, "good faith" reliance by appellant on any alleged prior inconsistent position taken by the city regarding Garnet Street.

### III

The heart of appellant's case is that the city's application of its zoning ordinances to appellant's property has resulted in a taking of his property by inverse condemnation.[9] Appellant claims that Zoning Ordinance No. 316, as applied to his property by the city, has deprived him of approximately one-fourth of the development potential of the subdivision. Appellant contends that absent Ordinance No. 316 he would have been able to add an additional five or six lots to his 1982 subdivision application. Thus, appellant only alleges inverse condemnation with regard to his 1982 application.[10]

■ Appellant's arguments are nothing more than a challenge of the city council's quasi-judicial action denying his subdivision

---

6. In fact, the record discloses that the second of these two denials involved an application submitted by the Balls (Curtis's predecessors in interest) at Curtis's request.

7. The district court's review of the record indicates that after the *Saviers* litigation, the Selag developers dropped Garnet Street as a proposed access for the project.

8. With the exception of Ordinance No. 316, all of these new ordinances were in effect at the time appellant acquired an interest in the property.

9. Again, at oral argument counsel for Curtis at one point stated that the only issue presented by his appeal, apart from the attorney fees issue, was the "taking" by inverse condemnation issue.

10. Of the three subdivision applications submitted by Curtis and denied by the city, only the 1978 application's denial was appealed within sixty days. However, Ordinance No. 316 was not in effect at that time, and appellant does not otherwise allege a taking based on Ordinance No. 252, the subdivision ordinance in effect at the time of the 1978 application. Indeed, appellant argued in his brief to this Court and as noted above that if Ordinance No. 252 was in effect at the time of his 1982 subdivision application no inverse condemnation would have occurred as he would have been able to include the additional five or six lots in the 1982 plat application.

application. As such, the express provisions of I.C. §§ 67–6519, –6521(d), limit appellant's remedy to seeking judicial review of the city council's action pursuant to I.C. § 67–5215(b)-(g). Both I.C. §§ 67–6519 and 67–6521(d) require that such review be sought within 60 days of the city council's action. In *Bone v. City of Lewiston*, 107 Idaho 844, 693 P.2d 1046 (1984), we held that I.C. § 67–5215(b)-(g) provided parties aggrieved by a zoning commission or city council's decision relative to zoning issues with a "complete, detailed, and exhaustive remedy ...." *Bone v. City of Lewiston*, 107 Idaho at 847, 693 P.2d at 1049. Indeed, one of the express bases upon which review may be had pursuant to I.C. § 67–5215 is that the governing body's actions (*e.g.*, the city council's decision) are "in violation of constitutional ... provisions." I.C. § 67–5215(g)(1). Again, as stated in *Bone:* "We find no evidence that the legislature intended other avenues of appeal to be available .... [Therefore,] we hold that § 67–5215(b)-(g) is the exclusive source of appeal for adverse zoning decisions." *Bone v. City of Lewiston*, 107 Idaho at 847, 848, 693 P.2d at 1049, 1050.

■ Thus, in the present case the district court correctly held that Curtis is precluded from challenging the city's actions with regard to the 1982 application because he failed to seek review of the city's action within sixty days as required by I.C. §§ 67–6519, –6521(d). Appellant's 1982 application was denied by the city on August 15, 1983. Appellant did not seek review of that decision in district court until March 5, 1984, when he filed his second amended complaint which specifically included language covering the 1983 denial.

## IV

■ Finally, appellant contends that the district court erred in awarding attorney fees to the defendant city at the conclusion of the action in district court. We find appellant's arguments in this regard without merit. The district court awarded attorney fees to the defendant city pursuant to I.C. § 12–121. As counsel for appellant readily admits, the award of attorney fees pursuant to I.C. § 12–121 is committed to the sound discretion of the district court. Since the present action was instituted prior to the effective date of I.R.C.P. 54(e)(1) the district court is not required, as argued by appellant, to find that the case was brought or pursued "frivolously, unreasonably or without foundation," prior to awarding fees under the provisions of § 12–121. I.R.C.P. 54(e)(9); *Cottonwood Elevator Co. v. Zenner*, 105 Idaho 469, 670 P.2d 876 (1983); *Anderson v. Ethington*, 103 Idaho 658, 651 P.2d 923 (1982). Defendant City of Ketchum was the prevailing party below and thus it was within the district court's discretion under § 12–121 to award fees to the city. We find no abuse of that discretion.

The decision of the district court is affirmed. Costs and attorney fees to respondent City of Ketchum.

DONALDSON, C.J., and SHEPARD, BISTLINE and HUNTLEY, JJ., concur.

BISTLINE, Justice, concurring.

As with the plaintiff in *Dawson Enterprises, Inc. v. Blaine County*, 98 Idaho 506, 567 P.2d 1257 (1977), the plaintiff here appears to have bought into a bad situation for his development plans. As the majority opinion notes, the ordinances which resulted in the denial of his subdivision plat applications preceded his obtaining the property in question. Those ordinances have not been shown not rationally related "to the health, safety, morals and welfare of the community." *Id.* at 514, 567 P.2d at 1265. Consequently, the plaintiff's hardship is regrettable, but was not unforeseeable.