869 P.2d 1378

**Eugene FARNWORTH, Plaintiff–Appellant,**

v.

**J. Walter FEMLING and Blaine County, Defendants–Respondents.**

No. 20109.

Supreme Court of Idaho, Twin Falls, November 1993 Term.

March 2, 1994.

E. Lee Schlender, Hailey, for plaintiff-appellant.

Hamlin & Sasser, Boise, for defendants-respondents. James D. Carlson argued.

JOHNSON, Justice.

This is a public employment case. We affirm the trial court's summary judgment dismissing the employee's claims for breach of implied contract of employment and for breach of the implied covenant of good faith and fair dealing. We conclude that the trial court should not have granted summary judgment dismissing the employee's federal civil rights First Amendment claim and the employee's tort of wrongful discharge claim.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

Eugene Farnworth was hired in 1977 as a deputy sheriff for Blaine County (the county). Farnworth worked for the county until 1988, when there was an election for sheriff. The incumbent sheriff, J. Walter Femling, announced his candidacy for sheriff on approximately April 1, 1988. Farnworth unsuccessfully opposed Femling in the primary election in May. Farnworth then switched parties and unsuccessfully opposed Femling in the general election in November.

During the election campaign, Femling says he received numerous complaints from citizens and co-workers about Farnworth's conduct and performance as deputy sheriff. Femling wrote "letters of concern" concerning these complaints and placed them in Farnworth's personnel file. The first of these letters is dated April 4, 1988.

Following the general election, Femling met with Farnworth and informed Farnworth that Femling did not intend to reappoint Farnworth as a deputy sheriff when Femling commenced his new term as sheriff. In this conference, Femling said Farnworth had attacked Femling during the campaign by running ads stating, "Elect a Sheriff that will be a Sheriff for all of Blaine County." Femling offered Farnworth a hearing to review the reasons for his dismissal and to give Farnworth an opportunity to respond to the charges against him. Among the charges was the following:

> In September and October, 1988, Officer Farnworth made public and written statements concerning the present Blaine County administration. For example, Officer Farnworth's campaign ads stated "Elect a sheriff that will be a sheriff for all of Blaine County" and "Elect a hard working and honest sheriff."

Farnworth chose not to attend the hearing and offered his explanation concerning the charges by a letter from his attorney. After reviewing this letter, Femling determined that Farnworth had not adequately refuted the charges against him and suspended Farnworth with pay until Femling appointed a new deputy to replace him.

By a letter dated February 21, 1989, Farnworth filed a notice of claim with the county, pursuant to the Idaho Tort Claims Act (ITCA). On March 7, 1989, Farnworth sued Femling and the county seeking damages for wrongful termination under 42 U.S.C. § 1983. Farnworth also requested that he be allowed to amend the complaint "to add additional actions and tort claims as may be necessary upon denial of a tort claim filed

against Blaine County for torts and actions not specifically limited to those provided for by 42 U.S.C. § 1983, upon denial of said claim by Blaine County."

Femling and the county moved for summary judgment.

Farnworth moved for leave to amend his complaint. The trial court granted Farnworth's motion, and on May 21, 1990, Farnworth filed an amended complaint, restating the allegations of the original complaint and adding claims for: (1) breach of an express employment contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) the tort of wrongful discharge. Femling and the county renewed their motion for summary judgment.

The trial court, District Judge May presiding, granted summary judgment to both Femling and the county on all issues. Several weeks later, the trial court issued an amended decision denying summary judgment on the breach of express employment contract and the breach of implied covenant of good faith and fair dealing claims. Shortly after issuing this decision, Judge May disqualified himself, and the case was assigned to District Judge Hart.

Nearly two years later, Femling and the county filed another motion for summary judgment. In this motion Femling and the county argued that no genuine issue of material fact existed with regard to Farnworth's claims for breach of an express employment contract and for breach of the implied covenant of good faith and fair dealing. Shortly thereafter, Farnworth filed a motion asking that the court construe his amended complaint to include a tort claim pursuant to ITCA. Farnworth also filed a motion for reconsideration of Judge May's order granting summary judgment.

The trial court denied summary judgment on the breach of express employment contract claim and granted summary judgment to Femling and the county on the breach of the implied covenant of good faith and fair dealing claim. The trial court reaffirmed the summary judgment on Farnworth's federal civil rights claims against Femling and the county. The trial court concluded that the

civil rights claim against Femling was barred under the doctrine of qualified immunity, and that the civil rights claim against the county failed to articulate a fundamental constitutional right which had been violated as required by *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

The trial court also concluded that Farnworth's ITCA claim was barred because the amended complaint related back to the date of the original complaint. The trial court said Farnworth's ITCA claim therefore violated the requirement of ITCA that a claimant wait ninety days after filing a notice of claim with the county before filing a lawsuit.

Subsequently, the trial court ruled that Farnworth had not pleaded a claim for breach of implied contract of employment. Pursuant to a stipulation of the parties, the trial court dismissed Farnworth's breach of express employment contract claim.

Farnworth appealed.

## II.

### THERE ARE GENUINE ISSUES OF MATERIAL FACT CONCERNING THE QUALIFIED IMMUNITY DEFENSE.

■ Farnworth asserts that the trial court should not have granted summary judgment on his federal civil rights claim against Femling under the First Amendment on the basis of qualified immunity. We agree.

We first note that Farnworth's lack of a right to continued employment is immaterial to the viability of his First Amendment claim. Regardless of the nature of the employment, a public employer "may not deny a benefit to a person on a basis that infringes [the person's] constitutionally protected interests—especially, [the person's] interest in freedom of speech." *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 72, 110 S.Ct. 2729, 2736, 111 L.Ed.2d 52, 65 (1990) (emphasis omitted) (quoting *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570, 577 (1972)).

■ In *Arnzen v. State,* 123 Idaho 899, 854 P.2d 242 (1993), the Court stated a three-part test to determine whether a party as-

serting qualified immunity is entitled to the defense:

1. Was there a clearly established law?

2. Did the conduct of the party asserting qualified immunity violate a clearly established right of the party claiming the violation?

3. Was the conduct of the party asserting qualified immunity reasonable?

*Id.* at 904, 854 P.2d at 247.

In this case, there was a clearly established law. A public employer may not enforce conditions of employment that infringe on an employee's constitutional right of free speech. *Connick v. Myers,* 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708, 716–17 (1983); *Gardner v. Evans,* 110 Idaho 925, 933, 719 P.2d 1185, 1193 (1986).

Whether Femling's conduct violated Farnworth's First Amendment rights depends on whether Femling took adverse action against Farnworth because Farnworth exercised these rights. The resolution of this question first requires us to examine whether Farnworth's speech that was noted by Femling in his charges against Farnworth was speech protected under the First Amendment. Whether Farnworth's speech was constitutionally protected entails a balancing of the interests of Farnworth in commenting upon matters of public concern against the employer's interest in promoting the "efficiency of the public services it performs through its employees." *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1735, 20 L.Ed.2d 811, 817 (1968). Under this analysis, Farnworth has the initial burden to show that his conduct was constitutionally protected. *Mt. Healthy City Board of Ed. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471, 484 (1977).

In *Lubcke v. Boise City/Ada Cty. Hous. Auth.,* 124 Idaho 450, 860 P.2d 653 (1993), the Court recently noted: "[I]t is clearly settled law that government officials cannot terminate public employees for exercising their First Amendment rights to speak on a matter of public concern except in limited circumstances." *Id.* at 465, 860 P.2d at 668. Citing *Pickering,* 391 U.S. at 570 n. 3, 88

S.Ct. at 1735 n. 3, 20 L.Ed.2d at 818 n. 3, the Court stated:

[D]ismissal for the exercise of First Amendment rights might be permissible in cases where the need for confidentiality is great or in cases where the relationship between the "superior and subordinate is of such a personal and intimate nature that certain forms of public criticism would seriously undermine the effectiveness of the working relationship between them."

*Lubcke,* 124 Idaho at 465, 860 P.2d at 668.

The Court also noted that "[t]he inquiry into the protective status of the speech is one of law, not fact." *Id.* (quoting *Connick,* 461 U.S. at 148 n. 7, 103 S.Ct. at 1690 n. 7, 75 L.Ed.2d at 720 n. 7).

In deciding whether Farnworth's speech was protected, we must first determine if Farnworth's speech involved a matter of public concern. If it did, we must decide whether there were genuine issues of material fact concerning the four factors set out in *Pickering:*

1. the effect of Farnworth's speech on the discipline and harmony among co-workers;

2. the employer's need for confidentiality;

3. whether the speech impeded Farnworth in competently performing his daily duties; and

4. the need to encourage a close and personal relationship involving loyalty and confidence between Farnworth and Femling.

*Lubcke,* 124 Idaho at 465, 860 P.2d at 668.

We conclude that Farnworth's speech concerning the type of sheriff the county needed was a matter of public concern. Farnworth's statements about a sheriff for all of the county and a hard working and honest sheriff relate to matters about which the public is concerned—the type of office holder a candidate for public office will be.

Although there is evidence indicating some disruption in the sheriff's department because of some other conduct and speech of Farnworth, there is no evidence that Farnworth's statements about electing a sheriff for all the county and a hard working and honest sheriff created any disruption.

Therefore, on the basis of the record now before us, employing the *Pickering* factors, we conclude that this speech was protected by the First Amendment, and it was not reasonable for Femling to take adverse action against Farnworth based on these statements. For this reason, the trial court should not have granted summary judgment to Femling on the basis of qualified immunity.

For guidance to the trial court on remand, we point out that once a public employee has established that the employee's activity was constitutionally protected, the employee then has the burden of showing that the protected activity was a substantial or motivating factor in the decision of the public employer to take adverse action against the employee's employment. If the employee carries this burden of going forward, the burden of going forward then shifts to the employer, who may avoid liability by showing by a preponderance of the evidence that the same decision would have been made absent the constitutionally protected conduct. *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576, 50 L.Ed.2d at 484.

### III.

### FARNWORTH FAILED TO STATE A CLAIM FOR BREACH OF AN IMPLIED CONTRACT OF EMPLOYMENT.

■ Farnworth asserts that he pleaded a claim for breach of an implied contract of employment. We disagree.

Farnworth alleged that he "was a permanent employee as defined by the Manual and by the facts and circumstances surrounding his employment" and that Femling and the county breached his express contract of employment "as well as the implied covenant of fair dealing...." Farnworth argues that these allegations, read together, set out a breach of implied contract theory. The trial court ruled that an implied contract claim was "not at issue by the pleadings."

■ An implied in fact contract is defined as one where the terms and existence of the contract are manifested by the conduct of the parties with the request of one party and the performance by the other often being inferred from the circumstances attending the performance. *Clements v. Jungert*, 90 Idaho 143, 153, 408 P.2d 810, 815 (1965).

Pleadings should be liberally construed. *Stewart v. Arrington Construction Company*, 92 Idaho 526, 530, 446 P.2d 895, 899 (1968) (doubts concerning the sufficiency of a complaint should be resolved in favor of the complainant). *See also* I.R.C.P. 8(f) (all pleadings shall be so construed as to do substantial justice). *Cf.* I.R.C.P 8(a)(1) (a pleading shall contain a short and plain statement of the claim showing that the pleader is entitled to relief). Even liberally construing Farnworth's pleadings, however, we conclude that Farnworth did not state a claim for breach of an implied contract of employment.

Farnworth did not specifically allege that there was an implied contract of employment. The allegations concerning "the facts and circumstances of his employment," upon which Farnworth relies, were part of his civil rights claim brought pursuant to 42 U.S.C. § 1983. The allegations concerning the breach of the implied covenant of good faith and fair dealing speak for themselves. (*See* part IV, below.) These allegations cannot be construed to plead the breach of an implied contract. In addition, Farnworth never directly addressed the implied contract claim in his briefs opposing the various summary judgment motions, nor did he move to amend his pleadings to include such a claim.

### IV.

### THE TRIAL COURT CORRECTLY GRANTED SUMMARY JUDGMENT DISMISSING FARNWORTH'S BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM.

■ Farnworth asserts that the trial court should not have granted summary judgment dismissing his breach of the implied covenant of good faith and fair dealing claim. We disagree.

Farnworth relies on *Sorensen v. Comm Tek, Inc.*, 118 Idaho 664, 799 P.2d 70 (1990), for the application of the covenant of good

faith and fair dealing to employment at will. In *Sorensen*, the Court adopted the plurality opinion in *Metcalf v. Intermountain Gas Co.*, 116 Idaho 622, 778 P.2d 744 (1989), which announced this application of the covenant. *Sorensen*, 118 Idaho at 669, 799 P.2d at 75. The plurality opinion in *Metcalf* applied the covenant "prospectively to breaches or violations of the covenant occurring after the effective date of [the *Metcalf*] opinion, and to the claims in [*Metcalf*]." *Metcalf*, 116 Idaho at 628, 778 P.2d at 750. In *Sorensen*, the Court concluded "that the *Metcalf* opinion should be applied to all cases which had been filed at the time that the *Metcalf* opinion was issued on August 8, 1989." *Sorensen*, 118 Idaho at 669, 799 P.2d at 75.

Farnworth amended his complaint on May 21, 1990, adding a claim for breach of the implied covenant of good faith and fair dealing. This claim related back to March 7, 1989, the date Farnworth filed the original complaint. I.R.C.P. 15(c). Therefore, Farnworth is entitled to the application of the covenant of good faith and fair dealing developed by the plurality in *Metcalf* and reaffirmed by the Court in *Sorensen*.

Farnworth contends that the county and Femling breached the covenant when they "terminated his permanent employment without good cause." This application of the covenant was rejected in *Metcalf*, when two justices agreed with the following statement of the Arizona Supreme Court in *Wagenseller v. Scottsdale Memorial Hosp.*, 147 Ariz. 370, 385–86, 710 P.2d 1025, 1040–41 (1985) (en banc):

> We … recognize an implied covenant of good faith and fair dealing in the employment-at-will contract, although that covenant does not create a duty for the employer to terminate the employee only for good cause. The covenant does not protect the employee from a "no cause" termination because tenure was never a benefit inherent in the at-will agreement.

*Metcalf*, 116 Idaho at 627, 778 P.2d at 749.

By the adoption in *Sorensen* of the plurality opinion in *Metcalf*, the Court included this limitation on the application of the covenant. This forecloses Farnworth's suggested application of the covenant in this case.

## V.

## THE TRIAL COURT SHOULD NOT HAVE DISMISSED FARNWORTH'S ITCA CLAIM ON THE GROUND THAT IT WAS FILED PREMATURELY.

■ Farnworth asserts that the trial court should not have dismissed his ITCA claim contained in the amended complaint on the ground it was filed prematurely. We agree.

ITCA contains a procedure for a claimant to file a tort claim against a governmental entity. I.C. §§ 6–906, 6–906A, and 6–907. ITCA also provides:

> **If the claim is denied,** a claimant may institute an action in the district court against the governmental entity or its employee in those circumstances where an action is permitted by this act.

I.C. § 6–910 (emphasis added).

Farnworth mailed his notice of claim to the county on February 21, 1989, and filed his original complaint on March 7, 1989. The original complaint requested that Farnworth be allowed to amend his original complaint "to add additional actions and tort claims as may be necessary upon denial of a tort claim filed against" the county. The county is deemed to have denied the claim by its failure to approve or deny the tort claim within ninety days. I.C. § 6–909. On May 21, 1990, Farnworth amended his complaint to include a claim under ITCA.

If a notice of claim is not filed with the governmental entity within the time permitted by ITCA, the claimant is barred from bringing suit under ITCA. I.C. §§ 6–907, 6–908; *McQuillen v. City of Ammon*, 113 Idaho 719, 722, 747 P.2d 741, 744 (1987). This case presents a different question, however.

The trial court ruled that the ITCA claim contained in the amended complaint relates back to the date of filing the original complaint, necessitating the dismissal of the ITCA claim, because it was filed prematurely in violation of I.C. § 6–910. The trial court relied on I.R.C.P. 15(c) which provides, in part:

Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

This provision is curative, not restrictive. If a claim or defense asserted in an amended pleading would be barred by the statute of limitations, under the terms of I.R.C.P. 15(c), this limitation may be cured by relating back to the date of the original pleading. It was not correct to apply I.R.C.P. 15(c) to restrict Farnworth's ITCA claim in this action.

We also note that the trial court relied on *Curtis v. City of Ketchum*, 111 Idaho 27, 720 P.2d 210 (1986), in dismissing Farnworth's ITCA claim for being filed prematurely. This reliance is misplaced. *Curtis* was an appeal of a denial of various subdivision plat applications. The only reference to ITCA in *Curtis* was to the trial court's ruling that the plaintiff was barred from seeking relief under ITCA because the plaintiff failed to wait ninety days after filing a claim with the city before filing the action in district court. At oral argument before the Idaho Supreme Court, plaintiff's counsel conceded that no tort claims action was presented by the case. *Id.* at 30 n. 1, 720 P.2d at 213 n. 1. Therefore, the Court did not consider any ITCA claim in the appeal. Rather, the Court in *Curtis* held that the plaintiff was precluded from challenging the city's actions denying his subdivision application because he failed to seek review of the city's action within sixty days as required by I.C. §§ 67–6519 through 67–6521(d). *Id.* at 33, 720 P.2d at 216. Therefore, *Curtis* does not require that Farnworth's ITCA claim be dismissed because it was filed prematurely.

## VI.

### CONCLUSION.

We affirm the trial court's summary judgment dismissing Farnworth's claims for breach of an implied employment contract and for breach of the implied covenant of good faith and fair dealing. We vacate the trial court's summary judgment dismissing Farnworth's federal civil rights claim and his tort of wrongful discharge claim. We remand the case for further proceedings.

Because of the mixed result, we award no costs on appeal, nor do we find it appropriate to award attorney fees on appeal.

McDEVITT, C.J., and BISTLINE, TROUT and SILAK, JJ., concur.